THE ILLINOIS CENTRAL RAILROAD COMPANY

*v.*

THE CHICAGO, BURLINGTON AND NORTHERN RAILROAD COMPANY.

*Filed at Ottawa September 26, 1887.*

| | |
|---|---|
| 122 | 473 |
| 30a | 487 |
| 122 | 473 |
| 138 | 459 |
| 122 | 473 |
| 139 | 316 |
| 143 | 618 |
| 122 | 473 |
| 149 | 279 |
| 122 | 473 |
| 193 | 6224 |
| 122 | 473 |
| e211 | 362 |

1. REMOVAL OF CAUSE—*from State to Federal court—in proceeding under Eminent Domain act, as between two railroad companies.* In a proceeding to condemn a right of way by a railway company over lands held by the Illinois Central Railroad Company, partly under grant of the United States and partly by condemnation, the latter company moved the court to transfer the cause to the Circuit Court of the United States, on the ground that it owed duties to the United States which it could not discharge efficiently if its right of way was taken, which motion was overruled: *Held*, that there was no error in refusing to so transfer the cause to the United States court.

2. EMINENT DOMAIN—*condemning the right of way, along the line of one railroad, for the use of another company.* The legislature of the State, subject to the conditions in the constitution, has the power, by a general law, to authorize one railway company to condemn a part of the right of way of another, longitudinally, several miles, when necessary for the construction and use of the new road; but without such legislative authority such condemnation can not be had.

3. The general grant of power given in section 17, chapter 114, of the Revised Statutes, relating to railroads, to take and condemn real estate for railroad purposes, is not intended to extend to property already applied to a public use.

4. While the legislature have provided by law for the crossing and intersection of one railroad over and across the track and right of way of another, and required the company whose road is crossed or intersected, to unite with the new railway company in forming such intersections and connections, and grant the proper facilities therefor, it has not given a new railway corporation the right to condemn the right of way of a prior company, longitudinally, for a number of miles in length, or any part thereof, to the exclusion of such prior company.

5. The power to take the right of way, or any part of the right of way, of another railway company, is expressly limited by the statute to the purposes of crossing, intersecting and uniting,—or, more shortly stated, to the "connections" of the two roads.

6. The petitioning company has no power, under section 19 of the Railway act, to take any part of the right of way of another company, except for the purpose of some connection resulting from a crossing or inter-

section, or the uniting and joining of the two roads at some point in the line of the new road selected by the petitioning company.

7. STATUTE—*rule of construction—to give effect to every provision thereof.* A statute should be construed in such manner that all its parts will not only be consistent with each other, but that every provision thereof shall be given its proper effect, so that nothing therein shall appear to be superfluous or redundant.

APPEAL from the Circuit Court of Jo Daviess county; the Hon. WILLIAM BROWN, Judge, presiding.

Mr. B. F. AYER, for the appellant:

The circuit court erred in denying the petition for the removal of the cause into the Federal court. *Boone County* v. *Patterson,* 98 U. S. 403; *Pacific Removal cases,* 115 id. 17; *Insurance Co.* v. *Pechner,* 95 id. 183; *Water Co.* v. *Keyes,* 96 id. 201; *Stone* v. *South Carolina,* 117 id. 430.

If some title, right, privilege or immunity on which the recovery depends, will be defeated by one construction of a law of the United States, or sustained by the opposite construction, the case will be one arising under the laws of the United States, within the meaning of the Removal act of 1875. *Starin* v. *New York,* 115 U. S. 257; *Railroad Co.* v. *Mississippi,* 102 id. 135; *Cohens* v. *Virginia,* 6 Wheat. 264; *Osborn* v. *United States Bank,* 9 id. 738; *New Orleans* v. *Armos,* 9 Pet. 224; *Mayor* v. *Cooper,* 6 Wall. 247; *Tennessee* v. *Davis,* 100 U. S. 257; *Ames* v. *Kansas,* 111 id. 449.

The act of Congress was intended to secure, and did secure, to the government the free use of appellant's road, into whose hands soever the property may lawfully come. *Railroad Co.* v. *United States,* 93 U. S. 442.

The grounds of the motion to dismiss are, first, that the plaintiff has no lawful authority to take property *in invitum;* second, that the property sought to be taken is not subject to condemnation under the laws of the State; and third, that the property is not necessary for the purposes sought for. These questions may be raised by the motion. *Railroad Co.*

v. *Trustees,* 43 Ill. 303; *Railroad Co.* v. *Dix,* 109 id. 237; *Railway Co.* v. *Railroad Co.* 112 id. 587.

The property in question is not subject to condemnation, under the existing laws of this State, for the purposes named in the petition. *Railroad Co.* v. *Trustees,* 43 Ill. 303; *People* v. *Miner,* 46 id. 384; *Springfield* v. *Railroad Co.* 4 Cush. 63; *Railroad Co.* v. *Railroad Co.* 118 Mass. 391.

A railroad corporation organized under a general law has no right to lay out its road within the right of way of another company. Such authority might be granted by the legislature, but has not been granted. *Railroad Co.* v. *Railroad Co.* 124 Mass. 368; *Matter of Boston Railroad Co.* 53 N. Y. 574; *Railroad Co.* v. *Williamson,* 91 id. 552; *Matter of New York Railway Co.* 99 id. 23; *Matter of City of Buffalo,* 68 id. 167; *City of Bridgeport* v. *Railroad Co.* 36 Conn. 255; *Cemetery Association* v. *New Haven,* 43 id. 234; *Railroad Co.* v. *Railroad Co.* 66 Ill. 174; *Railroad Co.* v. *Town of Lake,* 71 id. 333; *Horse Railway Co.* v. *Horse Railway Co.* 81 id. 523; *Railway Co.* v. *Railway Co.* 87 id. 317; *Railway Co.* v. *Railroad Co.* 112 id. 589.

The property is not subject to condemnation, because already appropriated to another necessary public use, and because not indispensably necessary for the use of the appellee. The courts have no power to revise the action of the legislature. *Railroad Co.* v. *Lake,* 71 Ill. 336; *Bridge Property* v. *County Commissioners,* 103 Mass. 124; *Corporation* v. *County of Norfolk,* 6 Allen, 353; *Park Commissioners* v. *Armstrong,* 45 N. Y. 243; *Secombe* v. *Railroad Co.* 23 Wall. 108; Mills on Eminent Domain, sec. 11, and cases cited.

Mr. R. H. McClellan, also for the appellant, as to the right of one railway company to condemn the right of way of another, cited *Railway Co.* v. *Railroad Co.* 112 Ill. 589, and *Railroad Co.* v. *Railroad Co.* 97 id. 507.

Mr. John N. Jewett, also for the appellant.

Mr. CHARLES M. OSBORN, Mr. M. D. HATHAWAY, and Mr. SAMUEL A. LYNDE, for the appellee:

Property held by the United States, if not used for governmental purposes, may be condemned. *Kohl* v. *United States,* 91 U. S. 367; *United States* v. *Bridge Co.* 6 McLean, 517; *United States* v. *Chicago,* 7 How. 185; *Railroad Co.* v. *Railroad Co.* 66 Ill. 174; *Railroad Co.* v. *Railroad Co.* 97 id. 515.

Property, of whatever kind or description, held by a railroad corporation, but not used in the performance of its duties to the public, may be taken, under the powers granted by the present statutes of this State, to the same extent and under the same circumstances as property held by individuals may be taken. *Railroad Co.* v. *Railroad Co.* 66 Ill. 174; *Railroad Co.* v. *Railroad Co.* 87 id. 317; *Railroad Co.* v. *Railroad Co.* 75 id. 117.

Property held by a railroad company, and actually in use in the performance of its duties to the public, may be taken when it is not essential for that use, and the use to which the property is to be put by the corporation seeking to take, is superior in degree to that to which the property is already devoted. *Illinois and Michigan Canal* v. *Railroad Co.* 14 Ill. 314; *Railroad Co.* v. *Railroad Co.* 97 id. 515; 100 id. 21; *Railroad Co.* v. *Railroad Co.* 105 id. 408; *Railroad Co.* v. *Railroad Co.* 112 id. 589; *Railroad Co.* v. *Railroad Co.* 36 Conn. 196; *Railroad Co.* v. *Railroad Co.* 83 N. C. 495; *Railroad Co.* v. *Gaslight Co.* 63 N. Y. 326; *Railroad Co.* v. *Bailey,* 3 Ore. 164; *Railroad Co.* v. *Railroad Co.* 7 Foster, 183; *Water Power Co.* v. *Railroad Co.* 23 Pick. 316; *Blind Asylum case,* 43 Ill. 303; *Railroad Co.* v. *Railroad Co.* 118 Mass. 291; *Railroad Co.* v. *Railroad Co.* 124 id. 368; 53 N. Y. 574; *Prospect Park Co.* v. *Williamson,* 91 id. 552; 68 id. 167.

Where property is necessary for the use of two corporations, and the corporations and the uses for which the property is required are substantially of equal importance, if it is practicable for the two corporations to use it jointly, in such a man-

ner as to accommodate the necessities of both, such joint use may be obtained by condemnation, the rule being that priority of occupation gives no exclusive right, except so far as the actual existence of the principal franchise is involved. *Railroad Co.* v. *Railroad Co.* 97 Ill. 515; *Railway Co.* v. *Railway Co.* 105 id. 117; *Town of Lake* v. *Railroad Co.* 71 id. 334; *Railroad Co.* v. *Railroad Co.* 67 id. 147; *Railroad Co.* v. *Railroad Co.* 96 id. 274; *Railroad Co.* v. *Railroad Co.* 108 id. 265.

As to the character of the necessity which will authorize the taking of property already in public use, see *Lake Shore case*, 97 Ill. 513; *Springfield* v. *Railroad Co.* 4 Cush. 63.

As to question of removal to the Federal court, see *Osborn* v. *Bank*, 9 Wheat. 738; *McCulloch* v. *Maryland*, 4 id. 456; *United States* v. *Bridge Co.* 6 McLean, 517; *United States* v. *Chicago*, 7 How. 194; *Kohl* v. *United States*, 91 U. S. 367; *Railroad Co.* v. *Railroad Co.* 3 Fed. Rep. 106; *Railroad Co.* v. *Railway Co.* 1 McCrary, 304; *Baker* v. *Gee*, 1 Wall. 333; *Mills Co.* v. *Railroad Co.* 107 U. S. 557; *Emigrant Co.* v. *Adams Co.* 100 id. 61; *Dowell* v. *Griswold*, 5 Saw. 39; *Savings Society* v. *Ford*, 114 U. S. 641; *Hoadly* v. *San Francisco*, 94 id. 4; *Stavin* v. *New York*, 115 id. 248; *Tucker* v. *Ferguson*, 22 Wall. 527.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

By the present proceeding, the Chicago, Burlington and Northern Railroad Company seeks to condemn, for railroad purposes, certain real estate in Jo Daviess county, belonging to the Illinois Central Railroad Company, the appellant herein. That part of the land sought to be taken which gives rise to the most serious question involved in the present controversy, consists of three strips of unequal width, running longitudinally with and constituting a part of so much of appellant's right of way as lies between the rocky bluffs and the eastern bank of the Mississippi river, between Portage Curve and East Dubuque. Appellant derives title to part of this land through the act of Congress of the 20th of September, 1850, popularly

known as the Illinois Central railroad grant. The part of the right of way thus acquired is two hundred feet wide. The remainder of it, having been acquired in pursuance of the statute, is, consequently, but one hundred feet wide. The track of appellant is laid in the center of its right of way, and the part of it proposed to be taken by appellee is all that part of the westerly half which lies eight feet or more west of the center line of the track. This would leave but about two feet between passenger cars passing each other on the two roads.

As the grant from the government to the State, just referred to, and through which appellant derives title to a part of the right of way proposed to be taken, was made upon the express condition that the appellant's road and branches "should be and remain a public highway for the use of the United States, free from toll or other charge upon the transportation of any property or troops of the United States," and that the United States mail should, at all times, be transported thereon under the direction of the post office department, and as appellant's defence to the proceeding is partly based upon the hypothesis that the whole of its right of way is indispensable to the discharge of the duties which it owes to the government under said grant, it is contended that the present suit necessarily involves a Federal question, which the appellant has the right to have passed upon and determined by the Federal courts. Acting upon this view of the law, the appellant applied to the court below for a transfer of the cause to the Circuit Court of the United States. This application having been denied, the appellant then filed therein a written motion to dismiss the petition as to each of the parcels of land in question, setting forth the grounds of the motion in numerical order, the fourth of which we think sufficiently covers the question thereby sought to be raised, and is as follows:

"4. Because the plaintiff has located its railroad longitudinally for a long distance, to-wit, the distance of ten miles and upwards, within defendant's right of way, and the several

parcels of land described in plaintiff's petition form part of said right of way, and are already devoted to public use by respondent, and are necessary to such use, and there is no necessity that plaintiff's said railroad should be located within said right of way."

This motion having also been overruled, was renewed after the evidence was all in, and was again overruled. The jury to whom the cause was submitted, after having been formally charged in respect to the law, returned into court a verdict fixing appellant's compensation and damages at $40,000, upon which the court rendered final judgment, and the defendant appealed.

Numerous questions are presented by the record, which have been ably and exhaustively discussed by counsel on both sides; yet in the view we have taken of the case it is not deemed necessary, nor indeed proper, to consider but two of them: First, did the court below err in refusing to transfer the cause to the United States Circuit Court? Second, did the court err in refusing to dismiss appellee's petition?

Being of opinion that the second question must be answered in the affirmative, which will necessarily lead to a reversal of the judgment, it will subserve no good purpose to enter upon a discussion of the other. Suffice it, therefore, to say, that upon the authorities cited in the briefs, and for the reasons assigned by appellee's counsel, we are of opinion the court ruled properly in denying the application to transfer the cause to the United States court.

In considering the propriety of the ruling of the court in refusing to dismiss the petition, either before or after the evidence was in, we do not deem it necessary to enter into an inquiry as to the legal *status* of appellee, for the purpose of determining whether it is such a body as might, under the constitution and laws of the State, condemn property for the construction and maintenance of its projected road. For the purposes of the conclusion reached, it may be conceded that it is.

The only question we shall consider is, whether the property sought to be condemned is subject to be taken by appellee for the purposes specified in the petition.    That the legislature of the State might, subject to the conditions imposed by the constitution, take the property for the purposes in question, we have no doubt.    And we think it equally clear, that the legislature might, by a general law manifesting such intention, authorize one railroad company to condemn a part of the right of way of another, to the extent and for the uses proposed in this case; but without such legislative authority or enabling act it is manifest the taking of it would be unauthorized.    This is conceded.    Such being the case, the question resolves itself into this : Is there any existing legislative authority for taking property, circumstanced as this is, for the purposes and in the manner proposed?    If such authority exists, it is to be found only in sections 17 and 19, of chapter 114, of the Revised Statutes.    Said sections, so far as they have any special bearing upon the present inquiry, are as follows :

"Sec. 17.    If any such corporation shall be unable to agree with the owner for the purchase of any real estate required for the purposes of its incorporation or the transaction of its business, or for its depots, station buildings, machine and repair shops, or for right of way, or any other lawful purpose connected with or necessary to the building, operating or running of said road, such corporation may acquire such title in the manner that may be now or hereafter provided for by any law of eminent domain.

"Sec. 19.    Every corporation formed under this act shall, in addition to the powers hereinbefore conferred, have power : First, to cause such examination and survey for its proposed railway to be made as may be necessary to the selection of the most advantageous route, and for such purpose may enter upon the lands or waters of any person or corporation, but subject to responsibility for all damages which shall be occasioned thereby.    *    *    *    Fourth, to lay out its road, not

exceeding one hundred feet in width, and to construct the same, and, for the purpose of cuttings and embankments, to take as much more land as may be necessary for the proper construction and security of the railway.   *   *   *   Fifth, *to construct its railway across, along or upon any stream of water, water-course, street, highway, plank-road, turnpike or canal, which the route of such railway shall intersect or touch.*   *   *   * Sixth, *to cross, intersect, join and unite its railways with any other railway before constructed at any point in its route,* and upon the grounds of such other railway company, with the necessary turn-outs, sidings and switches, and other conveniences in furtherance of the objects of its connections; and every corporation whose railway is or shall be hereafter intersected by any new railway, shall unite with the corporation owning such new railway, in forming such intersections and connections, and grant the facilities aforesaid; and if the two corporations can not agree upon the amount of compensation to be made therefor, or the points and manner of such crossings or connections, the same shall be ascertained in manner prescribed by law."

The principle is well recognized that a statute should be construed in such a manner that all its parts will not only be consistent with each other, but that every provision thereof shall be given its proper effect, so that nothing in the act will appear to be superfluous or redundant.   Should we, in violation of this important principle of construction, attempt to construe or give effect to section 17, above cited, without regard to the provisions of the 19th section, we might, by adhering strictly to the letter, and closing our eyes to the consequences that would result from such a construction, reach the conclusion that that section is a general grant of power to any railroad company organized under the general law, to take, under the Eminent Domain act, any real estate whatever for the purposes specified in the section, without regard to who owns it or to what uses it is applied.   It will be observed that the only express qualifications or limitations upon the company's

right to thus take, is its inability to agree with the owner for the purchase of the property, and that the property itself is *required* or necessary for some of the objects or purposes set forth in the section.    Nevertheless, the construction here suggested, although within the literal terms of the act, is, as every one will admit, wholly inadmissible, even without reference to. the provisions of the 19th section.    To give it effect according to its literal terms, the entire right of way of every railroad in the State would be subject to be taken by condemnation, like any other real estate.    That the legislature could have intended this, or the disastrous consequences that would necessarily result from it, is simply absurd, and consequently such a construction is wholly inadmissible.    It is evident that if the legislature had intended this grant of power to take real estate for railroad purposes should extend to the right of way of existing railway companies, there would have been no occasion whatever for adopting the special provisions contained in the 19th section in respect to the crossing and uniting with other railways, and it will hardly do to say, that although the power to take the right of way for the purpose of a crossing, etc., is not given by the 17th section, yet 'that it is given for the purpose of a main track, or for some other specific purpose, about which not a word is said in either section.

Viewing the 17th section in the light of the provisions of the 19th, and applying the general principle of construction adverted to at the outset, we are clearly of opinion that the general grant of power therein given to take real estate for railroad purposes, was not intended to extend to property already applied to a public use.    This being so, it became necessary, as we have already seen, to provide for the exceptional cases relating to crossings and the uniting with other roads. If there were other exceptional cases in the legislative mind when providing for crossings, etc., it surely was a very opportune time to name them in that connection.    Having failed to do so, we are warranted in concluding, as we do, that the spe-

cial cases provided for were all which, in the judgment of the legislature, public interest or convenience demanded.

Learned counsel for appellee, apparently conscious of the doubtfulness and insecurity of their position, so far as it is rested on the 17th section, seek to entrench themselves behind the sixth clause or division of the 19th section, which, as we have seen, authorizes any corporation organized under the act, "*to cross, intersect, join and unite* with any other railroad before constructed, and at any point in its route upon the ground of such other railroad." Counsel say: "We think that the court will give a meaning to all the words, and we submit that the word 'join' was used advisedly in this statute, to authorize and require railroad companies to join in the use of such property as might become necessary to accomplish the purposes of both railroads; and it will be observed, that by the latter clause of the paragraph the power is given to determine the amount of compensation, under the law of eminent domain, if they can not agree, so that all the powers, viz., to cross, intersect, join and unite with such other road, were intended to be compulsory, and, as we think, were intended to cover every contingency which might arise."

As we are clearly of opinion the construction here contended for is not the true one, we have given counsel the full benefit of whatever there is in it, by setting out, in their own words, all they have said about it. The terms "join" and "unite," as used above, were clearly intended to authorize merely the bringing together and the forming of a physical union or connection between the tracks of the proposed road and those of the one already built. The transitive verbs, "join," and "unite," are used conjunctively, and have for their common object the word "railways," which word they govern in the objective case. Nothing is said about joining in the use of any property, or about co-operating together for any purpose; nor is any expression used from which such an idea can be inferred, without doing violence to the language used. The grammatical sense

and the popular sense of the language used entirely coincide. Nothing ambiguous or doubtful is perceived in it.

But conceding the construction counsel have placed upon it to be the correct one, it is not perceived how that would strengthen appellee's position, for the object of the condemnation proceeding is not to compel the appellant to "join" in the use of any property. On the contrary, it is to take from appellant, and deprive it absolutely of all right whatever in about one-half of its right of way for a distance of eleven miles or thereabouts. There is, in our opinion, no warrant or authority in the laws of this State for such an act. As the question turns upon the construction of our own statute, it would therefore be an unprofitable consumption of time to follow counsel in their elaborate discussion of the cases relating to this subject, founded upon constitutions and statutes differing from our own, and we must therefore decline to do so.

With respect to the claim that the case is one of peculiar hardship, demanding a departure from the general rule on the subject, we submit that conceding the hardship to exist, (about which it is unnecessary to express any opinion,) it is no part of the duty of courts to provide a remedy in any case, much less in one where the legislature has purposely, as it would seem here, declined to provide one. We say purposely declined, because it would be unreasonable to suppose that the legislature did not consider the question whether, under special circumstances, it might not sometimes become necessary for one railroad company to take, longitudinally, the whole or a part of the right of way of another company, to be used for its main tracks; and the fact that no provision was made for a case of that kind affords the strongest evidence that the non-action of the legislature was intentional. If the legislature had intended to confer the power claimed by appellee, how easy and natural it would have been to do so by inserting a provision for that purpose in the fifth clause of section 19. But nothing of the kind was done. There, as it has been seen,

power is given to the condemning company "to construct its railway across, along or upon any stream of water, water-course, street, highway, plank-road, turnpike or canal," etc. Now, if after the word "canal," it had been added, "or along and upon the right of way of any other railway company, pro-vided the part proposed to be taken is not necessary for the successful operation of the railway of such other company," it would have made the law as appellee now claims it to be; but the legislature declined to add these words or any others of similar import, and we must construe the act as it is written. The enumeration of the powers granted by the fifth and sixth clauses of the 19th section, according to a familiar rule of construction, is, by implication, a denial of all other like powers. *Expressio unius exclusio alterius.*

But in addition to this authoritative rule of construction, and what has already been said on the subject, we think the sixth clause of the 19th section bears upon its face indubit-able evidence of the correctness of the construction we have placed upon the act. First, it will be observed that the cross-ing, intersecting and joining and uniting, therein authorized, is limited to a "*point*" in the route of the proposed road. The expression used would seem to be altogether inappropri-ate to the taking of a strip of land extending longitudinally a distance of ten or eleven miles. The phrase, "at any point in its route," used by the legislature in connection with the words, "cross, intersect, join and unite," is not only expressive of the thought that was in the legislative mind, but also of the effect which would necessarily result from either of the acts authorized to be done; for to cross or intersect or join or unite to another road, necessarily marks the "point" of such crossing, intersection or uniting of the two roads. Roads, when thus joined and united, may merge into a single road, or the two companies may arrange for a joint use of the same tracks, but in the nature of things there can be no extension of the point of intersection or union; and we emphasize the

fact, that the power to take the right of way, or of any part of the right of way, of another company, is expressly limited to the purposes of crossing, intersecting and uniting—or, more shortly, to the "*connections*" of the two roads. This latter expression is more comprehensive than either of the other terms. Indeed, it embraces all three of the cases indicated by the terms, cross, intersect, join and unite. That the term "connections" is used in this sense, will hardly be questioned, and the fact that it is thus used, affords additional evidence of the correctness of the construction we have given to the statute. Thus, it will be observed the condemning company is authorized to cross, intersect, etc., "upon the grounds of such other railway company, with the necessary turn-outs, sidings * * * and other conveniences, *in furtherance of the objects of its connections.*" Further on, it is made the duty of the old company whose road is to be crossed, intersected, etc., to unite with the new company "in forming such intersections and *connections.*" It is then added, that if the companies can not agree upon the amount of compensation to be made for the property, "or the *points* and manner of crossing, or such *connections,* the same shall be ascertained in manner prescribed by law." All these provisions and expressions considered, the conclusion would seem to be irresistible that the petitioning company has no power, under the provisions of the 19th section, to take any part of the right of way of another company, except for the purpose of some connection, resulting from a crossing or intersection, or the uniting and joining of the two roads, at some point on the line of the new road selected by the petitioning company.

The judgment of the court below will be reversed, and the cause remanded, with directions to that court to dismiss the petition as to the parts of the right of way of the appellant, longitudinally, sought to be condemned.

*Judgment reversed.*

CRAIG and SHOPE, JJ., dissenting.