Newhall *v.* Galena and Chicago Union Railroad Company et al.

Horatio Newhall, Appellant, *v.* The Galena and Chicago Union Railroad Company et al., Appellees.

APPEAL FROM COOK COUNTY COURT OF COMMON PLEAS.

A lateral road is one which proceeds from some point on the main trunk between its termini; and is but another name for a branch road, both being a part of the main road.

Where a right is conferred to build lateral roads, the presumption follows that the company has the same authority to obtain the right of way for such roads as is conferred for the main line.

Where an extension of time is given by the legislature to a railroad company for completing its road, which has the right to build lateral routes, the same time will be considered as extended for the lateral routes.

The rule of strict construction will be applied to railroad charters; but this rule only applies in case of ambiguity, or where a power is claimed by implication; but when a power is expressly given, strict construction will maintain it; and where the legislature has given a railroad company power to build lateral roads, without fixing any limits to the length of such lateral roads, the court will not, as a general rule, fix any limit.

Newhall filed his bill, seeking to enjoin the Galena and Chicago Union Railroad Company from constructing a lateral road, extending from the main trunk towards Dixon. The bill alleged, that Newhall was a stockholder in the Galena and Chicago road, and that by the construction of the lateral road in question his dividends would be diminished, and the resources of the company impaired. The bill charged, that the company had not power to build the lateral road. To the bill an answer was filed, denying that the revenues would be diminished or the resources of the company would be impaired, and affirming the right and power of the company, under its charter, to build the lateral road sought to be enjoined. By consent, a *pro formâ* decree was pronounced by M. Skinner, Judge, at the July term, 1852 of the Cook County Court of Common Pleas, dismissing the bill. The complainant thereupon took his appeal to this court.

N. B. Judd, J. Frink, G. Goodrich, and Lyman Trumbull, for appellant.

J. H. Collins, for appellees.

Caton, J. The principal question in this case depends upon the construction to be given to that part of the sixth section of the defendants' charter, which authorizes them to construct lateral roads, and which is in these words: "And they may also construct, maintain, and use such other lateral routes as may

be deemed advantageous, and expedient, and necessary, under the same rights and privileges as by this act is provided for the construction of the main route. And it shall be lawful, also, for the said corporation to unite with any other railroad company, already incorporated, or which may be incorporated upon any part of said road, upon such terms as may be agreed upon by the directors of said company; and also to construct such other and lateral routes as may be necessary to connect them with any other route, or routes, which may be deemed expedient." After the main trunk of the road had been completed, and put in operation, from Chicago to Rockford, and while prosecuting the work still further west, the board of directors caused to be surveyed and located, a road starting from the main road at a point called Junction, about 30 miles west of Chicago, and proceeding, in a south-westerly direction, to Jefferson Grove, in Ogle county, where it is contemplated uniting with the Rockford and Rock Island Railroad, which is in contemplation, or being constructed; and this road, thus surveyed and located, the board of directors are proceeding to construct. The question is, Is this a lateral road within the provision of the charter above quoted? We think it is. A lateral road is one proceeding from some point on the main trunk, between its termini. The defendants were authorized to build such lateral roads as should be deemed expedient and necessary. This is a road lateral to, and proceeding from, the main road. This is a simple fact. Ingenuity cannot remove or disprove it. Its angle of divergence from the main road is not shown, nor is its length given, in the record; and we can only form an opinion of them from the geography of the country. The general route of the lateral road must lie at an acute angle with the main trunk, and its length, as was stated at the bar, may be about 40 miles. We were asked, in the argument, if the defendants may build a road 40 miles in length, and terminating, or connecting with, another road, at a distant point from the main trunk of this road, of what length, or to what point may they not build a lateral road? We do not feel called upon to answer the question. The legislature has not seen fit to fix a limit; and we do not feel called upon, in this case at least, to do so. When the case arises, which was supposed in argument, of an attempt to run a road to Cairo, or Shawneetown, or any other similar apparently gross abuse of the power given in this provision of the charter, using it in a way palpably and manifestly beyond any thing which could have been in the contemplation of the legislature, in passing the charter, it will then become the duty of this court to say whether the courts shall set a limit, and what limit, to a power

Newhall *v.* Galena and Chicago Union Railroad Company et al.

which the legislature has seen fit to confer without fixing a limit. I fully recognize the propriety, and even necessity, of applying the rule of strict construction to the powers granted in these railroad charters; but the rule can only be applied in cases of ambiguity, or where a power is claimed by inference or implication, and is not expressly given by the charter. Where a power is expressly given, a strict construction maintains it. There must be ambiguity to give room for construction. The legislature takes the responsibility of granting these charters; and it is for them to see that too much power is not expressly given. We may say, that they shall have no power unless it is expressly given, or unless it necessarily results from the express provisions of the charter, that it was the intention of the legislature that they should possess the power; but the legislature has no right to give a power without restriction, relying upon the courts to restrain its exercise within judicious limits. At least, it will be time enough for us to attempt such restriction when an absolute necessity for it manifestly arises. It certainly does not arise in this case. In considering the objects to be accomplished, as specified in the act, in connection with the grant of the power claimed to be exercised, we cannot say that it is exercised in a way, or to an extent, which the legislature would not have sanctioned, had the route and termini of this lateral road been specified in the act of incorporation itself. We think the right to build this lateral road is expressly conferred by the charter.

One other objection to the exercise of the right remains to be considered. The twentieth section of the original charter provides: " The said corporation shall be allowed three years from the passage of this act, for the commencement of the construction of the said railroad and turnpike; and in case the same shall not be completed within ten years thereafter, the privileges herein granted shall be forfeited;" and that part of the sixth section above quoted, confers the right to build lateral roads, " under the same rights and privileges as by this act is provided for the construction of the main route." By the second section of an amendment to the charter, approved on the 4th of March, 1837, "the time for the final completion of the said road is extended five years." On the one hand, it has been objected that the extension of time in the act of 1837 does not apply to the lateral roads; while, on the other, it has been urged that the limitation in the original charter had only reference to the main trunk, and that there is no limitation fixed within which the lateral roads shall be completed. We think there is as much propriety in the last suggestion as in the first. The main

object of the limitation was to secure to the public the benefits to be expected from the completion of the principal road provided for in the charter, within a specified time, while the lateral roads, which are in no way specified or indicated, were authorized as an inducement to the completion of the principal or main road. They were left to the discretion of the company to be determined upon and located, as exigencies might require, and future events might suggest. Could their necessity have been foreseen and determined upon at the time the charter was passed, they would undoubtedly have been specified. While this course of reasoning might lead to the conclusion, that the requirements of the limitation would be satisfied by the completion of the main trunk, and that the right to build the lateral roads was not limited, we are inclined to the conclusion, that the main and lateral roads were considered, as a whole, as in fact constituting but one road, to which should be applied both the limitation in the original charter and the extension in the amendment. A lateral road is but another name for a branch road. Both must have a principal road from which they proceed. They are appendages to, and are properly a part of, the main road. It is manifest, from other parts of the charter, that the legislature considered and treated the main trunk and lateral roads as but one road, and embraced all within the words "said road." Unless this is so, the company have no right to acquire the right of way for lateral roads by condemnation and against the will of the owner. The only authority given in the charter to condemn the right of way is found in the eleventh and six following sections. In those sections, nothing is said about the lateral road, authority for constructing which had already been given; but in the eleventh section, the whole is described as "the said road;" and in the twelfth section as "the said railroad, or turnpike, or the appendages thereto;" and in the same way are they described in the fifteenth section. It will hardly be pretended that it was the intention of the legislature to confer upon the company the right to build lateral roads, and not give them the right, at the same time, to acquire the right of way on which to build them. If such a right of condemnation was granted, it was given by including them in the description of "said road," as used in the eleventh section. In that sense were the words undoubtedly there used. If they were so used in the eleventh section, then we may reasonably suppose that they were intended to be equally comprehensive in the twentieth section, which creates the limitation; and also in the second section of the act of 1837, amending the charter, where the time for completing the "said road" was extended

five years. That time will not expire till the 16th of January, 1854, and till then, we think the defendants have the right to construct lateral roads, of which this is one.

The decree must be affirmed.

*Decree affirmed.*