THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY *et al.*, Plaintiffs in Error, *v.* JOHN COLEMAN *et al.*, Defendants in Error.

ERROR TO COOK.

In an action against two railroad corporations, if the judgment is against both, without any proof to justify a finding as to one of them, it will be reversed.

The admissions of the president of a corporation, made in the execution of his duties, about the business of the company, within the scope of the authority usually exercised by him, will be evidence against the corporation. The ordinary affairs of a corporation, such as custom has imposed upon or necessity requires of the president of a corporation, may be performed by him without express authority.

THIS was an action of assumpsit, brought in the Cook Circuit Court by the defendants in error, who were plaintiffs below, against the plaintiffs in error, for damages for not furnishing certain railroad iron for plaintiffs below to carry, according to a contract alleged to have been made between the parties. It

was tried at the November term, 1855, before his Honor, Judge Manierre, and a jury, and a verdict rendered for the plaintiffs for $5,364. It was brought to this court by writ of error.

SEDGWICK AND WALKER, for Plaintiffs in Error.

C. B. WAITE, for Defendants in Error.

SKINNER J. This was an action of assumpsit. The declaration alleges a contract whereby the Chicago, Burlington and Quincy railroad company, and the Central Military Tract railroad company, agreed to furnish, at Rock Island, a large quantity of iron, to be carried by the Colemans, for the railroad companies, from Rock Island to opposite Burlington, at the agreed price of six dollars per ton; and alleges for breach that the railroad companies did not furnish the iron for carriage, the Colemans being and remaining ready to carry the same. The cause was tried by jury, upon the general issue, and a verdict returned for the plaintiffs below, which the court refused to set aside. This court is of opinion that there is no evidence in the record to justify a finding against the *Central Military Tract railroad company*, and, therefore, the judgment must be reversed.

As the question of the admissibility of the admissions of Mr. Joy to charge the company, of which he was president, will be likely to arise upon another trial, we will dispose of that question.

These admissions relate to the making of the contract for carrying the iron by one Fayerweather, for the defendants below, and to his authority to make the contract. The plaintiffs below sent an agent to settle their claim on account of the contract, and with authority to settle it, to Chicago. He called on Mr. Joy, the president of the Chicago, Burlington and Quincy railroad company, at his office, in Chicago, and which seems to have been the public office of the company; informed him of his business, and attempted an adjustment of the claim. Mr. Joy refused to pay the claim, upon the grounds that it was exorbitant, and that the plaintiffs had been paid all they ought to have; and during the pendency of this, the negotiation, and concerning the matter out of which the claim arose, Mr. Joy admitted the making of the contract, and the authority of Fayerweather to make it, but objected that the contract was a bad one, and that the plaintiffs were not entitled to more than they had already received.

Mr. Joy was the president of a corporation, empowered by law to construct and operate a railroad through a large extent of territory; the company were operating their road, and the

business transactions appertaining and incident to the conduct of its affairs, must, of necessity, be extensive and multifarious—incapable of execution by a board of directors, and requiring a chief officer and executive head, with power to act in the transaction of the ordinary business of the corporation, as the exigencies of that business may require. The business of such corporations can be carried on only through their officers, agents and servants; through them only can they act or speak, and the president is treated by the public, and made by usage, the chief officer and executive head of the corporation. Through him numerous every day affairs of the corporation are transacted, and such acts as are incident to the execution of the trust reposed in him—of an ordinary character, arising in the routine of business—such as custom or necessity has imposed upon the office, he may perform for the corporation, without special or express authority. *Ryan* v. *Dunlap*, 17 Ill. R. 40. The old doctrine that corporations can only be bound by act under their corporate seal, has been long exploded. They have become numerous, and their operations extend into almost every enterprise of the country, demanding such powers and facilities, within their sphere of action, as belong to natural persons in the prosecution of the like enterprises; and being intangible and invisible beings, created by the law, they can exercise them through natural persons only. Unless they may be bound, in the ordinary affairs of the corporation, by the acts and admissions of their officers, so far as relates to the business usually transacted through such officers, they would enjoy an immunity incompatible with the rights of individuals, and destructive of the object of their creation. The president of a railroad corporation is treated by common usage as its head—an officer *within* and a *part of* the corporation, a mere artificial person, incapable itself of acting or speaking—and admissions of such officer, made in the execution of the duties imposed upon him, and concerning a matter upon which he is called upon to act, and which matter is within the scope of the authority usually exercised by him, are evidence against the corporation. Story on Agency, Secs. 134, 135 and 138; 2 Starkie's Ev. 29; 1 Greenlf. Ev., Secs. 113, 114 and 332; *Bank of Monroe* v. *Field*, 2 Hill R. 445; Breese R. 45; Angel and Ames on Corp. 220, 221; 7 How. and John. R. 104; 12 Wheaton R. 468; 19 Pick. R. 220; 4 John. R. 377; 4 Serg. and Rawl. R. 317; 11 ibid. 179; 2 Peters' R. 358; 21 Pick. R. 270; 4 Met. R. 163; 2 Root's R. 150; 8 Conn. R. 484. And it is immaterial whether the authority of the president exists by virtue of his office, or is implied from the course of business of the corporation.

Mr. Joy, having authority to make the contract, and to do

the same through another, was authorized to settle and adjust the claim arising out of it, and to bind the corporation thereby; and when the claim was presented to him, in his official capacity, for settlement, whether he settled or refused to settle it, he was acting in the business of the corporation, and within the scope and bounds of his powers; and what, therefore, he then said in relation to the subject matter of the business before him, is evidence against the corporation, as part of the *res gestæ.* The evidence shows that he had acted in behalf of the corporation in forwarding the iron, and had directed Fayerweather concerning its transportation, and he certainly would be likely to know the facts of the transaction, the subject matter of which was then before him for action, and in which he had participated.

Judgment reversed and cause remanded.

*Judgment reversed.*