Nov. Term,
1860.

TABER
v.
THE CINCIN-
NATI, &c.
RAILWAY CO.

------

## TABER and Another v. THE CINCINNATI, LOGANSPORT and CHICAGO RAILWAY COMPANY and Others.

Complaint to foreclose a mortgage executed by the railway company to a trustee, to secure the payment of certain bonds. The mortgage was conditioned that after default in the payment of the principal, or of any interest on said bonds, the trustee might lease the lands; or at his option, he might, and upon request of the holders of one-half of the bonds he should, cause the lands to be sold at public auction. The charter of the company contained no express grant of power to acquire, hold, mortgage or dispose of real estate, and the lands included in this mortgage were not such as were needed or used in the operation of the road. The bonds were issued after the law of *January* 20, 1852, (1 R. S., § 2, p. 427,) authorizing railroad companies to receive lands in payment of subscriptions of stock, went into effect.

*Held*, that a demand of the interest due upon the bonds by the holder thereof, at the place where they were payable, was sufficient, without any demand by the trustee.

*Held*, also, that it has been since the organization of the State government, and still is, the settled policy of our law makers to discourage the accumulation of real estate in the hands of corporations.

*Held*, also, that the railroad company, prior to the taking effect of the law of *January* 20, 1852, had no power primarily to acquire title to lands, other than for the immediate purposes of the road, and the defendants being estopped to deny that the company did acquire title to the lands, it must be presumed that such title was acquired under § 2 of that act.

*Held*, also, that the power to mortgage, conferred by the act of 1851, (Local Laws, 1851, p. 43), had reference only to such lands and property as the company could lawfully acquire, and could not therefore have included such as were not necessary to the purposes of the road.

*Held*, also, that the question as to what is a reasonable time for the sale of lands taken for stock, as required by § 2 of the act of 1852, *supra*, is in each case more a question of fact than of law.

Nov. Term,
1860.

TABER
v.
THE CINCIN-
NATI, &c.
RAILWAY CO.

*Held*, also, that a mortgage creating a lien in a manner, for a time, amount, and purpose, not inconsistent with such statute, may be valid, as the power to mortgage is not inconsistent with the duty to sell.

*Held*, also, that as the sale of the lands by the trustee without judicial proceedings, as provided for in the mortgage, is forbidden by statute, it was his duty to pursue the remedy provided by law for the foreclosure of mortgages.

*Held*, also, that a proper construction of the mortgage authorized a foreclosure for a failure to pay interest, though the principal was not yet due.

*Thursday,*
*January* 24.

APPEAL from the *Cass* Circuit Court.

HANNA, J.—The company executed a trust mortgage, to *Taber, August* 1, 1854, which, so far as it affects the case at bar, is as follows:

"*Whereas*, The party of the first part, in the lawful exercise of their corporate powers, are authorized to borrow the sum of ten thousand dollars; and whereas they (said company) are now about to borrow the sum of ten thousand dollars, to expend in the construction of their railroad from the town of *Richmond*, in the State of *Indiana*, to the town of *Logansport*, in the said State, and, to this end, have this day issued certain bonds, to the amount of ten thousand dollars, namely: Ten thousand dollars in bonds of one thousand dollars each, and numbered, respectively, from number one to number ten, inclusive; all of said bonds payable five years after their date, at the office of the *Ohio Life Insurance and Trust Company*, in the city of *New York;* and all of said bonds bearing interest at the rate of ten per cent. per annum, payable semi-annually at the said office of the *Ohio Life Insurance and Trust Company*, in the city of *New York*, on the first day of each *February* and *August* ensuing the date hereof, until the principal shall be paid; each of said bonds being authenticated by a certificate, signed by the said party of the second part, and containing a clause permitting the holder thereof to exchange the same, at par, for shares of stock in said railway company. [Here follows the description of the land and town lots, which we omit.] To have and to hold said premises, and every part thereof, with the appurtenances, unto the said party of the second part and his successor and successors in said trust. That is to say, in case the said party of the first part shall fail to pay the principal,

or any part thereof, or any interest on the said bonds, at any

time when the same may become due and payable, according to the terms thereof, when demanded; then, after sixty days after such default, in case such principal or interest shall then remain .unpaid," [Then follows a stipulation that the property may be taken possession of by the trustee, and leased or rented until a sum sufficient, after paying expenses, is realized to pay, &c.;] " or, the said party of the second part, or his successor or successors in said trust, at his discretion, may, or, on the written request of the holders of at least one-half of the bonds then unpaid and unconverted into stock shall, cause the said premises, or so much thereof as shall be necessary to pay and discharge the principal and interest of all such of said bonds as may then be unpaid and unconverted into stock, as aforesaid, to be sold at public auction in the town of *Logansport*, in the State of *Indiana ;* giving at least thirty days notice of the time, place and terms of sale, and of the specific property to be sold, by publishing the same in two newspapers, of good circulation, in the State of *Indiana ;* and shall execute to the purchaser or purchasers thereof a good and sufficient deed of conveyance in fee simple for the same, which shall be a bar against the party of the first part, their successors, and all persons claiming under them, of all right and interest or claim in and to said premises, or any part thereof; and said trustee shall, after deducting from the proceeds of said sale the costs and expenses thereof, and of managing such property, apply so much of the proceeds as may be necessary to the payment of said principal and interest due and unpaid on said bonds, and shall retain the residue of said proceeds of sales in his hands, to be applied to the payment of any interest or principal afterward to become due and payable on any of said bonds.

" And it is hereby expressly agreed and understood, that the said party of the first part reserves the right to sell any portion of the property herein specified, at a price not less than the sum herein named as the appraised value thereof, or a proportionate price for any portion of any of the said several pieces of property. And whenever said party of the first part, having made such sale, shall purchase and surrender to the

Nov. Term,
1860.

TABER
v.
THE CINCIN-
NATI, &c.
RAILWAY CO.

said party of the second part, or his successor or successors in said trust, to be canceled, an amount of bonds herein specified, and designed to be secured by this deed of trust, equal to the appraised value of any portion of said property as herein specified; or of the proportionate part of the aforesaid value of any of said several pieces of property, then the said party of the second part, or his successor or successors in said trust, shall execute and deliver to such person or persons as the said party of the first part shall designate, a deed in fee simple for such portion of said property.

"It is further understood and agreed, that until default shall be made by the party of the first part, in the payment of the interest on said bonds, when the same shall become due and payable; or of the principal, when the same shall become due; the party of the first part shall retain the possession of said property, and use and enjoy the same, and apply to their own use and benefit all rents and revenues of all descriptions arising from the same."

The complaint, as finally amended, among other things, averred that the bonds were sold to one of the plaintiffs, *Haney*, who afterward disposed of five of them to one *Musselman*, who is made a defendant; that the interest on the whole of them, due *February* 1, and *August* 1, 1855, and *February* 1, 1856, belonged to, and was the property of said *Haney*, who had presented the coupons therefor at the place where payable, and demanded payment, which was not made; that none of the bonds had been converted, and none of the lands sold to pay the same, or interest; that said lands are mostly wild and unproductive, the rents of which were inadequate to pay the interest as it accrued; that the trustee had not taken possession of them nor received any rents, nor did either of the holders of said bonds, &c. ever request the trustee to enter upon and take possession of said lands, &c.

There was a demurrer to the complaint because it did not state facts sufficient, &c., and for the want of proper parties.

The demurrers were sustained. It is presented to us upon the first ground of demurrer only. Several points are made, or objections taken, to this complaint: 1. That there is no

allegation that the trustee demanded the interest due. 2. For
not averring that none of the bond holders had requested him
to take possession, &c. 3. The company had no power to
mortgage the lands. 4. That this was not the proper
remedy, &c.

Nov. Term,
1860.

, TABER
v.
THE CINCIN-
NATI, &c.
RAILWAY Co.

As to the first point, there is an allegation of demand by
*Haney*, but not by *Taber*, at the place of payment. A
demand by the holder was, we think, sufficient. When
the interest fell due, *Taber* had no authority to make such
demand, nor indeed to act, until default made. A demand
then, dispensed with the necessity of any further demand.
The place where payable was the proper place to make a
demand.

As to the second point, the averment, for want of which
objection is taken, is, in point of fact, contained in the supple-
mental complaint filed.

The third is made by the able and elaborate arguments of
counsel the main point in the case. It is conceded by the
counsel for the plaintiffs, that a corporation, "being the mere
creature of law, possesses only those properties which the
charter of its creation confers upon it, either expressly, or as
incidental to its very existence." As an incident, it is con-
tended that this company had the power to acquire, hold, and
dispose of lands; and that the power to acquire included the
power to sell, which latter included the right to mortgage or
lease, &c.; that the first section of the original charter gave
those rights. The provision is as follows:

"And by that name said company may contract and be
contracted with, sue and be sued, and do all other things
proper and usual for similar companies to do; and they are
hereby invested with all the powers and privileges in any wise
necessary or expedient to carry into effect the proper business
of the association."

Neither the original charter nor the amendment thereto
contained any clause, in direct terms, conferring the right to
acquire, hold, mortgage and dispose of real estate. Local
Laws, 1851, p. 521; *id.* 1851, p. 43. It is conceded by
counsel for the defendants, that the company had the power
to acquire such real estate as was essential to the operation

Nov. Term,
1860.

Taber
v.
The Cincin-
nati, &c.
Railway Co.
of the road, but no more. The description of the real estate, contained in the record, negatives the idea that it was for that purpose alone. These acts, especially the seventh section of that of 1851, authorized the company to borrow money and issue bonds therefor; and to secure the payment thereof, to mortgage the road, income and other property of the company.

Before the bonds in suit were issued, another statute took effect, 1 R. S., p. 426, by which railroad companies, which were then, or might thereafter be incorporated, were empowered to receive lands, &c., in subscription of stock. The second section is as follows : "It may be lawful for said corporations, by the consent of the directors of the same, to receive the subscription for the capital stock of said companies, under such regulations and restrictions as their boards of directors may prescribe, any lands, town lots, real estate, or other description of property as may be offered for that purpose : *Provided, however*, that the same shall be sold, except so much as may be necessary for the use of said road, or for the purposes aforesaid, within a reasonable time, and the proceeds applied for the construction of said roads or their appurtenances."

It is assumed in argument by defendant's counsel, although the record does not show it, that the lands mortgaged were acquired in payment for stock.

We believe we may safely assume that it is historically true of the legislation of *Indiana*, from the time a State government was founded, in 1816, until the passage of this statute, that it was the evident policy of our law makers to discourage, and, as far as consistent with public policy, prohibit the concentration and accumulation of real estate in the hands of corporations. We do not see any thing in this statute, or in cotemporaneous or subsequent legislation, which properly falls within our notice, that shows an intention to permanently change that policy. It is true, the statute gives corporations the power, perhaps, to an ill-advised extent, to acquire title to lands, and is that far a departure from the, theretofore, general policy ; but the after part of the same section is manifestly an adherence to that

Nov. Term,
1860.

TABER
v.
THE CINCIN-
NATI, &c.
RAILWAY Co.

line of policy, by requiring an early sale of the same, that is, in a reasonable time.

We do not think the company, until the statute of 1852 was in force, had the power, primarily, to acquire title to the lands described; nor to any lands, other than for the immediate purposes of the road. We suppose the defendants all stand in such condition that they are estopped to deny that the company did acquire title; it must, then, have been under the law of 1852.

The power to mortgage, spoken of in the act of 1851 could have had reference only to such lands and property as the company could lawfully acquire, and could not, therefore, have included such as was not necessary to the purposes of the road.

It is contended that the proviso to the section quoted, of the act of 1852, in effect prohibits the mortgage of lands: that the right to mortgage can not stand in connection with the positive requisition to sell at an early day.

Perhaps the question of reasonable time is, in each case, more a question of fact than of law: the statute itself does not define the term; nevertheless, cotemporaneous legislation may furnish some light upon the subject. The same rules, so far as applicable, should control the action of companies, whether organized under special charters or under the general law. By that general law, 1 R. S., p. 420, the construction of a road must be commenced within three years after the formation, &c. of the company, and finished and put in operation in ten years. We do not decide that a corporation can not mortgage its property for a term of years longer than that so mentioned in the statute; but that, in this case, the power certainly existed, for the reason that it falls within that time.

The record does not inform us when title to the lands was acquired. They were mortgaged for five years. Whether the company would, under this statute, have the right to voluntarily tie up and encumber its lands, to such an extent, or in such manner, as to prevent the sale of them within the reasonable time, and for the purpose, mentioned in that statute, is a question we are not now called upon to decide.

Nov. Term,
1860.

TABER
v.
THE CINCIN-
NATI, &c.
RAILWAY Co.

What we do decide is, that a mortgage creating a lien, in a manner, for a time, amount, and purpose, not inconsistent with such statute, it seems to us, may be valid. This power to mortgage is not, in our opinion, inconsistent with the duty to sell. Even if true that it must be exercised with a view to that duty, it would only show that the property should not thereby be placed in such condition as to put it out of the power of the company to comply with the terms of the statute, and fairly and honestly discharge the duty thereby enjoined.

As to the mode in which the action of the company, in exercising the powers conferred, should be questioned, whether in the manner here attempted, or by direct proceedings in the name of the State, we need not pause to inquire, for the reason that the conclusion we have arrived at makes it unnecessary to do so. That conclusion, upon the point under consideration, is, that if the defense could not be here set up, the demurrer should have been overruled; if it could be set up, still it should have been overruled, because we are not enabled to say, in view of the statutes referred to, and from any thing appearing upon the record, that the execution of the mortgage in question was an undue exercise of the power conferred.

As to the form of the remedy, it is insisted that the course indicated in the mortgage should have been pursued, and a resort to the Courts was therefore unnecessary.

We do not agree with this proposition. The statute forbids that mode of sale by a mortgagee. 2 R. S., § 3, p. 239. Although *Taber* was a trustee, yet he was also a mortgagee, and it was his duty to pursue the remedy, governing him as such, provided by the statute; especially as there was no statute prescribing his duty as trustee, which, under the circumstances, conflicted therewith.

It is also argued, with some show of earnestness, that no proceedings could be taken, except to take possession of, and lease the lands, until some portion of the principal should fall due. This is not the correct construction of the contract. The principal all falls due at the same time; installments of interest at different times. When a part falls due, proceedings

were authorized; and if the lands sold thereunder should bring more than enough to pay the sums due, the balance was to be retained to apply upon principal or interest afterward to become due. If proceedings could not be instituted until the principal was due, it would be all due; and therefore, as to the principal, this latter clause would be a nullity.

Again, the trustee could not, without a request, &c., take possession to lease. That request, it is averred, was not made. Upon a failure to pay, it might have been discretionary with him to take steps to sell, until a contingency should arise which would then make it his duty to do so.

*Per Curiam.* — The judgment is reversed, with costs. Cause remanded, &c.

*D. D. Pratt*, for appellants.

*R. M. Corwine, W. Z. Stewart, C. B. Smith* and *H. P. Biddle*, for appellees.

(1.) By counsel for appellant: The instrument was, in legal effect, a mortgage, and it was competent for the company to make it. 25 Barb. 284; *id*. 484; 1 Selden, 547; *id*. 557.

The trustee could not lawfully employ the power conferred on him, by a sale of the lands for the non-payment of the principal or interest. 2 R. S., § 3, p. 239; *id*. §§ 631, 633, 637, p. 176; *Wheeler* v. *Hart*, 7 Ind. 584.

If the trustee might lawfully sell under the power, the remedy was not an exclusive one. 1 Hilliard on Mort., p. 118, note *a*, 128; 2 *id*. 83; 7 Ala. R. 823; 21 *id*. 573; 3 Kernan, 205.

By the common law, a corporation authorized to dispose of its property, may lease, grant in fee, in tail, or for term of life, or mortgage, and though insolvent, assign its property in trust for the payment of the debts. *Reynolds* v. *Comm's Stark Co.*, 5 Ham. (O. Reports), 205; Co. Lit. 44 *a* 300, 310; 1 Kyd on Corp. 108 to 116; *Jackson* v. *Brown*, 5 Wend. 594; Ang. & Ames on Corp., §§ 191, 271; 2 Kent, 313, note *a*; *Sherry* v. *Denn*, 8 Blackf. 554; 3 McLean R. 393.

(2.) By counsel for appellees: It is against the policy of the State to allow railroad companies to deal in lands, and become large landholders. Grants like these confer no powers by implication. *Newhall* v. *Galena Railroad Co.*, 14 Ill. 273; *Cleveland, &c. Railroad Co.* v. *City of Erie*, 27 Penn. St. R. 380; *Commonwealth* v. *Erie and N. E. Railroad, id*. 339; 9 Howard, (N. S.) 172.