## The Lake Shore and Michigan Southern Railway Company

### *v.*

## The Baltimore and Ohio and Chicago Railroad Company.

### *Filed at Ottawa March 31, 1894.*

1. RAILROADS—*right to cross or intersect another road.* The sixth clause of section 19 of the act of March 1, 1872, relating to railroads, confers the power upon any railway company to cross, intersect, join and unite its railway with any other railway before constructed, at any point in its route and upon the grounds of such other railway company, with the necessary turn-outs, sidings, switches, etc., in furtherance of the objects of its connections.

2. SAME—*connections.* The word "connections," as used in the statute, embraces all three of the cases indicated by the terms "cross, intersect, join and unite." When one road crosses another, the road crossing connects with the road crossed. The power to condemn exists for the purpose of the connection resulting from such crossing.

3. Where one road joins and unites with another, as, by means of a "Y" track, there is a connection between them thereby produced, and the power to condemn exists for the purpose of the connection resulting from such joining and uniting.

4. SAME—*condemnation for a crossing.* The power to condemn for a crossing is not limited to a case where the object of the crossing is to secure a connection by means of a joining and uniting with the road crossed, but a crossing may be condemned to enable the company condemning to connect with a different railroad, if necessary to the convenient operation of its main line.

5. SAME—*petition for condemnation—its sufficiency.* A petition by one railway company against another to condemn a part of the right of way of the latter company for joint use, alleged that the petitioner was unable to agree with the defendant "as to the proper or just compensation to be paid to it for the joint use of said property :" *Held,* that the allegation of inability to agree was sufficient. Where there is no direct proof of such allegation, the fact that there is a vigorous contest between the parties is evidence of such inability.

6. A petition of a railroad company recited that the company had located and constructed its line of railroad in accordance with its articles of incorporation, and that it desired to appropriate certain property, which was particularly described, for a joint use, for the purpose of building and constructing two tracks, so as to join, unite and connect its main tracks with the tracks of another railway company named.

The description designated the portion of the defendant company's "Y" track which was sought to be condemned for a crossing, and referred to a plat attached, showing the location of the main tracks of the defendant and petitioner, and the road with which connection was sought, and also the location and direction of the defendant's "Y" track, and of the proposed "Y" track of petitioner, giving distance, etc.: *Held*, that the petition was sufficient.

7. SAME—*right to construct lateral road.* The right to construct a branch or lateral road will generally depend upon the language of the charter, or of the provisions of the general law under which the corporation is organized; and such right does not exist where the power to build the branch road is not conferred by the charter, either in express terms or by necessary implication. The power to construct branches of a railroad is not incidental to the power to construct the road.

8. SAME—*lateral road defined.* A lateral road is but another name for a branch road, and a lateral or branch road is one which proceeds from some point on the main track between its *termini,* and is an appendage to and properly a part of the main road.

9. SAME—*right to construct side-tracks.* The grant of power to locate and construct a railway carries with it the right to construct turn-outs, sidings, and such conveniences as are usual in the necessary operation of the road.

10. SAME—*side-track—whether a re-location.* The construction of a side-track by one railway company in order to connect with the road of another company, for the purpose of exercising a right of passage over the tracks of the latter, as secured by a lease, can not, in any sense, be regarded as a re-location of the main road of the company constructing said side-track.

11. SAME—*location of road—exhaustion of the power.* It is well settled that where the *termini* and general route of a railroad are prescribed by the charter of the company, leaving the determination of details to its discretion, the power of the company to fix the location of the road is exhausted after such discretion has been exercised, and thereafter the location can not be changed without specific legislative authority, which, when granted, is to be construed strictly.

12. SAME—*right of location—whether exclusive.* The grant of a right to one railway company to build a road between given *termini* does not imply an obligation on the part of the State that other railroad companies, with their tracks and switches, shall not thereafter be granted the right to cross the State in a different direction, and thus pass over its tracks and switches.

7. EMINENT DOMAIN—*condemnation—proof of inability to agree.* To prove an inability to agree upon joint compensation by two railway companies for property sought to be taken, it was shown by the peti-

tioning company that negotiations were carried on between the presi-- dents of the two companies with a view of coming to an agreement for a crossing, which failed : *Held,* that it is not necessary for the peti- tioner's president to produce a resolution of his company authorizing such negotiations, when the authority of such officer to act was not disputed.

14. SAME—*petition for condemnation — its sufficiency.* Section 2 of the Eminent Domain act requires the petition for condemnation to set forth, "by reference," the authority of the petitioner. The authority here referred to is not the corporate resolution of the board of directors directing the proceeding to condemn to be begun, but the reference is to the authority vested by law in the corporation to exercise the power of eminent domain.

15. Section 2 of the Eminent Domain act does not require the petition for condemnation to contain an averment that the board of directors of the petitioner had voted for and directed the location of the road or track connection for which condemnation is sought. The statute requires the petition to state the purpose for which the prop-- erty to be condemned is sought to be taken or damaged, and to set forth the description of the property.

16. The petition complies with the direction of the statute if it refers to the act of the legislature granting the special charter, where the· petitioner acts under such a charter, or to the articles of incorporation, when the petitioning corporation is organized under a general law, or to the license or other authority to construct the public improve-- ment for which it is sought to condemn property.

17. SAME—*motion to dismiss—proof of incorporation.* On a motion to dismiss a petition to condemn land for a public use, the petitioning corporation must produce some evidence of its existence as a *de facto* or *de jure* corporation, but not necessarily evidence of corporate action in making the location of its right of way, as embodied in a resolution of the board of directors. It has been held that proof of corporate acts. done by the petitioner tends to show that petitioner is a corporation. *de facto.*

18. SAME—*set-off of benefits against damages.* The owner of land condemned for the use of the public must be paid in money the full value of the land taken, without deduction therefrom of any benefits. which may accrue to the remaining land from the construction of the improvement. · But special benefits to property not taken, but claimed to be damaged, may be considered for the purpose of reducing such damages, or of showing that to the extent of such special benefits there· are no damages.

19. Where a part of a "Y" track is taken, and damages are claimed as to the part not taken, it will be proper to consider special benefits

to the part of the "Y" track not taken, in reduction of such damages. In such case, it can make no difference at which end of the "Y" track the benefits accrue. If the point of benefit is within those parts of the "Y" track not taken, they will not be too remote to be considered.

20. CORPORATIONS—*liability for acts of officers—admissions of president.* The business of corporations can only be carried on through their officers, agents and servants, and they are bound, in their ordinary affairs, by the acts and admissions of such officers relating to the business usually transacted through such officers. The president of a railroad company is regarded as its head, and his admissions, made in the execution of the duties imposed upon him, concerning a matter upon which he is required to act, and which is within the scope of the authority usually exercised by him, is evidence against the corporation.

21. EVIDENCE—*expert testimony.* Where the subject is one upon which the jury is not as well able to judge for themselves as is the witness, an expert may be allowed to testify. If a defendant corporation, in a proceeding to condemn land for a joint use, is permitted to introduce expert testimony as to damages, testimony of a similar kind is allowable upon rebuttal.

APPEAL from the County Court of Cook county; the Hon. C. H. DONNELLY, Judge, presiding.

Messrs. GARDNER & McFADON, and Mr. PLINY B. SMITH, for the appellant:

The only power given a corporation organized under the general law of Illinois to condemn across the right of way of another company, is given in sec. 19, subdiv. 6, p. 1914, of 2 Starr & Curtis' Stat. This section gives no power to one company to take any part of the right of way of another company, except for the purpose of some connection resulting from a crossing or intersection of two roads at some point on the line of the new road selected by the petitioning company. *Railroad Co.* v. *Railroad Co.* 122 Ill. 486.

Petitioner was, in fact, endeavoring to construct a branch line, or else to make a re-location of its road, nineteen years after it had located the same under its charter. Treating the change as making a branch road, appellee had no authority to construct the same. *Railroad Co.* v. *Wiltse,* 116 Ill. 456.

Treating the change as a re-location of petitioner's road, for want of legislative authority appellee had no power to condemn therefor. *Brigham* v. *Railroad Co.* 1 Allen, 316; *Morehead* v. *Railroad Co.* 17 Ohio, 340; *Railroad Co.* v. *Railroad Co.* 2 Vroom, 205; *People* v. *Railroad Co.* 120 Ill. 65.

Under the Eminent Domain law there must have been an effort to agree as to the compensation for the crossing, and that effort, to meet the requirement of the second section of the Eminent Domain act, must be *bona fide* between the parties.

Appellant being a corporation, an offer on the part of appellee, to be availing as an effort to adjust, should' have so far preceded the date of filing the petition as to allow appellant to convene its board of directors and act on the proposition. Instead of so doing, appellee, by telegram, April 26, 1893, addressed a letter to John Newell, offering $50, and on the 28th of April filed its petition to condemn. This action shows no *bona fide* effort to agree.

The petition should have been dismissed because the corporate powers of petitioner were vested in its board of directors, and no action on their part directing the condemnation is shown. Gen. Railroad law, sec. 8, p. 1909, 2 Starr & Curtis; *Railroad Co.* v. *Railroad Co.* 47 Am. and Eng. Ry. Cas. 227; *Appeal of New Brighton Railroad Co.* 105 Pa. St. 13.

The series of questions put to appellee's witnesses in rebuttal, in substance asking if the new plan proposed by appellee would be a benefit or damage, in witness' opinion, the court improperly allowed to be answered against appellant's objections. *Railway Co.* v. *Moffitt*, 75 Ill. 524; *Hoener* v. *Koch*, 84 id. 408; *Railroad Co.* v. *Railroad Co.* 67 id. 142.

Benefits, if any, at the extreme eastern end of appellant's "Y" could not be set off against damages resulting from the crossing, done to appellant's business at the point of condemnation. *Todd* v. *Railroad Co.* 78 Ill. 530; *Railroad Co.* v. *Reich*, 101 id. 158; *Railroad Co.* v. *Brown*, 58 id. 61; *Railroad Co.* v. *Camp*, 45 Ga. 180.

Mr. Elbert H. Gary, and Mr. Parke E. Simmons, for the appellee:

Appellee's right to make its connection with the tracks of the Chicago, Rock Island and Pacific Railway Company is given by section 19, chapter 47, of the Revised Statutes. *Railroad Co.* v. *Railroad Co.* 122 Ill. 486.

To deny the right to condemn for this use, it should appear that what is sought is clearly an abuse of power, and a taking of private property for an object not required for the convenient operation of the road. *Railroad Co.* v. *Dix*, 109 Ill. 244.

The charter powers are to be construed with reference to the boundaries of the city when the charter was granted. Lewis on Eminent Domain, sec. 257; *Chope* v. *Plank Road Co.* 37 Mich. 95; *Commonwealth* v. *Railroad Co.* 27 Pa. St. 353.

Its powers never having been fully exercised and its construction made into the city, it still has the power, whenever the necessity arises, to complete that which its charter authorized it to do; and if it can not agree with the owners of the property, it has the right, in common with any railroad pursuing the objects of its incorporation, to exercise the right of eminent domain. This identical question was raised in *Railroad Co.'s Appeal*, 99 Pa. St. 155.

As to the sufficiency of the petition, see Rev. Stat. chap. 24, sub-sec. 5 of sec. 121; *Reed* v. *Railway Co.* 126 id. 48.

Of the evidence on motion to dismiss the petition, see *Ward* v. *Railway Co.* 119 Ill. 287.

As to expert evidence, see *Transportation Line* v. *Hope*, 95 U. S. 298; *Railway Co.* v. *Wallace*, 136 Ill. 87; *Hoener* v. *Koch*, 84 id. 408; *Railroad Co.* v. *Railway Co.* 67 id. 142.

Newell assumed to have authority to act on behalf of appellant, and his power to do so, and to bind appellant by his admissions, can not be questioned, under the decisions of this court. *Railroad Co.* v. *Coleman*, 18 Ill. 298; *Sewing Machine Co.* v. *Boyington*, 73 id. 534; *Insurance Co.* v. *White*, 106 id. 67.

That Newell, as president of the appellant company, has had full charge of this whole matter from the beginning, is clearly shown by the record. In any event, his acts will be presumed to have been authorized unless it is shown otherwise. *Glover* v. *Lee,* 140 Ill. 103.

Mr. Justice Magruder delivered the opinion of the Court:

This is a proceeding instituted by the appellee company, a corporation created under the General Railroad Law of Illinois, for the purpose of condemning a right of way for a crossing over what is called a "Y" track, belonging to the appellant company. A cross petition was filed by the respondent below, the appellant here, praying for an assessment of damages to property not taken. The trial resulted in verdict and judgment for the petitioner, and the case is brought here by appeal from such judgment.

The tracks of the appellant company run in a northerly and southerly direction and the tracks of the South Chicago branch of the Chicago, Rock Island and Pacific Railway company cross them running in an easterly and westerly direction, forming an angle upon the east side of appellant's tracks. In the angle thus formed is located the "Y" track sought to be crossed, which, in the form of an arc or semi-circle, diverges from appellant's main line and runs in a southeasterly direction until it connects with said South Chicago Branch of the C., R. I. & P. R'y Co. Said "Y" track is used by appellant in delivering cars to and receiving cars from various roads in South Chicago. The tracks of appellee run parallel with those of appellant from the south until 95th street in Chicago is reached, and then pursue a northeast course towards 93d street, passing over the territory embraced in said angle, which appears to lie between 93d and 95th streets, or thereabouts. The appellee desires to connect its main tracks towards the northeast in the direction of 93d street with the South Chicago

Branch of the Chicago, Rock Island and Pacific Railway tracks on the south in the direction of 95th street, and has built a side-track, or "Y" track, diverging from the east side of its main track and running thence in the form of a curve first in a southeasterly, then in a southwesterly direction, until, by crossing said main track, it reaches the tracks of the said South Chicago branch of the C., R. I. & P. R'y Co. This "Y" or curved track of appellee, designed to form a connection with said C., R. I. & P. R'y Co., so as to move appellee's cars from its main line on to the tracks of the C., R. I. & P. R'y Co., must pass over said "Y" track of the appellant, and it is for the purpose of securing a crossing for appellee's "Y" track over appellant's "Y" track that this proceeding is instituted.

The respondent below made a motion to dismiss the petition, and assigned reasons in writing therefor, and testimony was introduced by both sides in support of and in opposition to said motion.

*First.* It is said that the appellee had no power to condemn the appellant's right of way for a crossing except for the purpose of making a connection with appellant's road, and that, as the object of crossing appellant's "Y" track was to connect with another road, towit: the C., R. I. & P. R'y, the motion to dismiss should have been granted for want of authority to condemn. It is claimed, that this contention is sustained by the construction given by this court to the sixth clause of section 19 of the Act of March 1, 1872, in regard to the incorporation of railroad companies, (2 Starr & Cur. Ann. Stat. page 1914), in the case of *I. C. R. R. Co.* v. *C., B. & N. R. R. Co.* 122 Ill. 473. We do not think, that the language of that case is capable of the construction claimed for it. If we understand the position of counsel for appellant, it is that, under sections 17 and 19 of the general railroad law, one railroad company cannot condemn the right of way of another railroad company for a crossing, except for the purpose of making a statutory junction and union with the railroad company so

crossed.    This position as thus stated is not tenable.    The sixth clause of section 19 confers the power "to cross, intersect, join and unite its railway with any other railway before constructed, at any point in its route, and upon the grounds of such other railway company with the necessary turnouts, sidings and switches, and other conveniences, in furtherance of the objects of its connections," etc.    Counsel seem to interpret the word, "connections," as referring only to the joining and uniting of the two railways, as, for instance, by means of a "Y" track for the interchange of traffic; and they reason, that, because the joining and uniting is not with their road, there is no statutory power to condemn a crossing over their right of way.    But the word, "connections," is a comprehensive term, which embraces all three of the cases indicated by the terms, "cross, intersect, join and unite."    When one road crosses another, the road crossing connects with the road crossed.    The power to condemn exists for the purpose of the connection resulting from such crossing.    When one road joins and unites with another, as by means of a "Y" track, there is a connection between them thereby produced; and the power to condemn exists for the purpose of the connection resulting from such joining and uniting.    Such is the meaning of the case of *I. C. R. R. Co.* v. *C., B. & N. R. R. Co. supra.*    The power to condemn for a crossing is not limited to a case where the object of the crossing is to secure a connection by means of a joining and uniting with the road crossed.    Otherwise a road running north and south could not cross over a road running east and west, and pass on upon its route, without veering off or around so as to connect with the road crossed. It cannot be denied, that appellee had a right to join and unite by means of a "Y" track with the C., R. I. & P. R'y Co., if such "Y" or side track was necessary for the convenient operation of the main line of appellee's road.    (*South Chicago R. R. Co.* v. *Dix*, 109 Ill. 237).    Nor can it be denied that appellee had a right to condemn appellant's right of way for

a crossing. *(St. L., J. & C. R. R. Co.* v. *S. & N. W. R. R. Co.* 96 Ill. 274). As both rights existed, the exercise of the latter was in no way cut off by the exercise of the former. We are of the opinion that there was no error in overruling the motion to dismiss for the first reason thus indicated.

*Second.* It is said that the connection, which appellee proposed to construct between its main line and the C., R. I. & P. R'y Co., was either a branch line, or a re-location of its road years after its road had been located, and that, as there was no power conferred upon it by its charter to construct a branch line, or to make a re-location, there was no authority for condemning a right of way over appellant's "Y" track for a crossing for said connection.

A lateral road is but another name for a branch road; and a lateral or branch road is one, which proceeds from some point on the main trunk between its termini, and is an appendage to and properly a part of the main road. *(Newhall* v. *G. & C. U. R. R. Co.* 14 Ill. 273; *McAboy's Appeal,* 107 Pa. St. 548; *Morris & Essex R. R. Co.* v. *Central R. R. Co.* 2 Vroom, (N. J.) 205; *C. & E. I. R. R. Co.* v. *Wiltse,* 116 Ill. 449; 12 Am. & Eng. Enc. of Law, page 940, and cases cited in notes). The right to construct a branch or lateral road will generally depend upon the language of the charter, or of the provisions of the general statutory law under which the railroad corporation is organized; and such right does not exist where the power to build the branch road is not conferred by the charter, either in express terms, or by necessary implication. The power to construct branches of a railroad is not incidental to the power to construct the road. (Pierce on Railroads, page 495).

It is not claimed by counsel upon either side, as we understand their arguments, that the power to condemn lands for the construction of branch roads is conferred by the foregoing provisions of the general railroad law. If the connection between the appellee's road and that of the C., R. I. & P. R. R.

Co. is an independent branch road, .we should be compelled to hold, that there was no power to condemn appellant's right of way for a crossing in order to make such connection. But we do not think that the connecting track or tracks can be regarded as a branch road. The case upon which counsel rely for their contention in this regard is *C. & E. I. R. R. Co.* v. *Wiltse, supra;* but, there, it was proposed to condemn the land of the property owner, in order to build a spur road, about three quarters of a mile long, to reach the brick yard of a brick-making company, and thereby create a feeder to the main line and add to the value of the freights of the railroad company, and it was held, that the proposed track was not necessary to the running or operation of the main road, and that there was no authority, under the railroad charter, to build such a lateral road and condemn land for it, even though the earnings of the main line were thereby increased. But no such state of facts as existed in the *Wiltse* case is shown to exist here.

The appellee's charter authorized it to construct its road to and into the city of Chicago, whose southern boundary in 1874 extended only to 39th street. In that year appellee constructed its road as far as what is now 70th Street, and there formed a junction with the tracks of the Illinois Central Railroad company, over which, by lease or some other arrangement, it came into the city as far as Monroe Street. In 1891 appellee's lease, or right to use the tracks of the I. C. R. R. Co., ceased, (*B. & O. & C. R. R. Co.* v. *I. C. R. R. Co.* 137 Ill. 9), and it appears that it has secured from the C., R. I. & P. R. R. Co. the right to enter the city upon the tracks of the latter company, and, in order to do so, seeks to make the connection, which has made it necessary to cross appellant's "Y" track. Appellee's main line, running from south to north, crosses the South Chicago Branch of the C., R. I. & P. R. R. Co., running east and west, at such a sharp angle, that cars upon appellee's main line cannot be transferred therefrom to the

tracks of the C., R. I. & P. R. R. Co. without the curved side-track or "Y" track, for which it is here sought to condemn a crossing over appellant's "Y" track. This curved track is not over 800 feet in length, and, after diverging from the east side of appellee's main track on the north, returns thereto at or near the place where said main track crosses said South Chicago branch of the C., R. I. & P. R. R. Co., and there forms a junction with the latter company's tracks.

It thus appears, that this curved connection of appellee's road with the road of the C., R. I. & P. R'y Co. is in no sense a branch road, as already defined and as indicated in the *Wiltse* case, but that it is a mere side track, absolutely necessary to "the convenient operation of the main line of" appellee's railroad. (*South Chicago R. R. Co.* v. *Dix, supra*). Clause 6 of said section 19 not only authorizes the connections therein described, but also the necessary turnouts, sidings and switches, and other conveniences in furtherance of the objects of such connections. Upon the question of fact, whether the connection is a branch road or a side track, the evidence shows that it is the latter, and that it is not for a use foreign to the purposes of the main line of appellee, but needful for the operation of such main line. (*South Chicago R. R. Co.* v. *Dix, supra*).

In the light of the views here expressed, we can not see that the building of this side-track is a relocation of appellee's road. Its charter power was "to construct, own, operate and maintain a line of railroad from a point on the boundary line between Cook County, Illinois, and the State of Indiana to and into the city of Chicago in said Cook County." It is conceded that, about nineteen years ago, it constructed its main line from said boundary line on the south northward across what are now 95th, 94th and 93d streets as far as what is now 70th street, and, without further extending its own line from the latter point to 39th street, or into the city as it then was, it used the tracks of the I. C. R. R. Co. to come into the city.

It is well settled, that, where the termini and general route of a railroad are prescribed by the charter of the company leaving the determination of details to its discretion, the power of the company to fix the location of the road is exhausted after such discretion has been exercised, and thereafter the location cannot be changed without specific legislative authority, which, when granted, is to be construed strictly. (*People* v. *L. & N. R. R. Co.* 120 Ill. 65; 19 Am. & Eng. Enc. of Law, pages 826, 827, 828). But the question is not before us, whether the appellee has the power to extend its main line beyond 70th street. The question is, whether the appellee has the power to build a side, or "Y" track, as an appendage to, or turn-out from, that part of its main road already constructed to 70th street, for the purpose of connecting with the C., R. I. & P. R. R. Co. The side track in question diverges from and returns to the main track between 95th and 93d streets, which part of said main track was built nineteen years ago. Appellee had the power to acquire by lease the right of passage over the tracks of the C., R. I. & P. R. R. Co., under section 1 of the Act of Feb. 12, 1855, re-adopted as section 34 of chap. 114 of the Rev. Stat. of 1874. (Rev. Stat. of 1874, page 807; 2 Starr & Cur. Ann. Stat. page 1921; *Ill. Mid. R'y Co.* v. *The People*, 84 Ill. 426).

The grant of power to locate and construct a railway carries with it the right to construct turn-outs, sidings and such conveniences as are usual in the necessary operation of the road. The act of 1872, while conferring the power to condemn land for the purposes of such switches, turn-outs or sidetracks, and while requiring the persons incorporating the company to name the places from which and to which it is intended to construct the proposed railway, lays down no limitation as to the places where such switches, sidetracks or turnouts are to be constructed. When appellant organized as a corporation and built its road, it was charged with the knowledge that other companies had the right thereafter to organize and build

and operate their roads. The grant of a right to one railway company to build a road between given termini does not imply an obligation on the part of the State that other railroad companies, with their tracks and switches, shall not thereafter be granted the right to cross the State in a different direction, and thus pass over its tracks and switches. (*Connecting R'y Co.* v. *Union R'y Co.* 108 Ill. 265; *South Chicago R. R. Co.* v. *Dix, supra;* 12 Am. & Eng. Enc. of Law, page 945). The construction of a side track by one railway company, in order to connect with the road of another company, for the purpose of exercising a right of passage over the tracks of the latter as secured by a lease, cannot, in any sense, be regarded as a re-location of the main road of the company constructing such side-track.

*Third.* It is urged that the petition should be dismissed, because it does not aver that the board of directors of the petitioning company had voted for and directed the condemnation prayed for in this case, and had voted for and directed the location of the side-track connecting appellee's road with the C., R. I. & P. R'y Co.'s road.

Section 2 of the Eminent Domain Act requires the petition for condemnation to set forth "by reference" the authority of the petitioner in the premises. The authority here referred to is not the corporate resolution of the board of directors directing the condemnation proceeding to be begun; but the reference is to the authority vested by law in the corporation seeking condemnation to exercise the power of eminent domain. The petition complies with the direction of the statute, if it refers to the Act of the Legislature granting the special charter when petitioner acts under such a charter, or to the articles of incorporation when the petitioning corporation is organized under a general law, or to the license, or other authority to construct the public improvement, for which it is sought to condemn property. The requirement of the statute as thus construed is complied with by the petition in this case.

Section 2 of the Eminent Domain Act does not require the petition for condemnation to contain an averment, that the Board of Directors of the petitioner had voted for and directed the location of the road or track connection, for which condemnation is sought. (1 Starr & Cur. Ann. Stat. page 1042). The statute requires the petition to state the purpose for which the property to be condemned is sought to be taken or damaged, and to set forth a description of the property. The petition, here, contains a full description of the property and a statement of the purpose for which the petitioner seeks to take the property, and thus complies with the requirements of the law.

Cases are referred to by counsel, where, under statutes imposing the duty of location upon the president and directors of a railroad company, a question has arisen between two railroad companies having the right of eminent domain, as to which of them is entitled to a prior location upon the same property. In such cases, it must be determined what is a legal location of the line of one railroad so as to give priority over another; and, therefore, the question is raised, whether the board of directors have proceeded with the location of the line as required by the statute. (*Weidenfeld* v. *Sugar Run R. Co.* 48 Fed. Rep. 615; *W. & N. Branch R. Co.* v. *Phila. & E. R. Co.* 141 Pa. St. 407; *N. B. etc. R. R. Co.* v. *The Pitts. etc. R. R. Co.* 105 id. 13). But it is apprehended, that these cases have no application here where the location is of a "Y" or switch track.

Upon such a motion as this to dismiss, the petitioning corporation must produce some evidence of its existence as a *de facto* or *de jure* corporation, but not necessarily evidence of corporate action in making the location in question as embodied in a resolution of the board of directors. It has been held, that proof of corporate acts done by the petitioner tends to show that petitioner is a corporation *de facto*. (*Ward* v.

*M. & N. W. R'y Co.* 119 Ill. 287). Such corporate acts are shown in the case at bar.

The petition recites, that the petitioner has located and constructed its line of railroad in accordance with its articles of incorporation, and that it desires to appropriate certain property, which is particularly described, for a joint use, for the purpose of building and constructing two tracks, so as to join, unite and connect its main tracks with the tracks of the South Chicago branch of the C., R. I. & P. R'y Co. The description designates the portion of appellant's "Y" track, which it is sought to condemn for a crossing, and refers to a plat thereto attached, showing the location of the main tracks of appellant and appellee and of the C., R. I. & P. R'y Co., and also the location and direction of appellant's "Y" track and of the proposed "Y" track of appellee, giving distances, and the names of streets, and the numbers of lots, etc. We think that the petition sufficiently describes the location of the proposed connection, and, by proper references to its articles of incorporation as recorded in the offices of the Secretary of State and of the Recorder of Deeds of Cook County, sufficiently indicates the source of its authority to condemn. (*C. & W. I. R. R. Co.* v. *E. C. R. Co.* 115 Ill. 376; *Reed* v. *O. & M. R'y Co.* 48 id. 111; *Ward* v. *M. & N. W. R'y Co.* 119 id. 287.)

*Fourth*—It is said that the court should have dismissed the petition at the close of the evidence, because it was not proven that petitioner and respondent could not agree on the question of damages for the proposed crossing.

The petition contains an allegation, that the petitioner "is unable to agree with the L. S. & M. S. R'y Co. as to the proper or just compensation to be paid to it for the joint use of said property." This allegation is a sufficient compliance with the statute. (*Reed* v. *O. & M. R'y Co.* 126 Ill. 48). Even where there is no direct testimony as to the truth of this allegation, yet the fact that there is a vigorous contest, as there is here, between the petitioning corporation and the owner of

the property sought to be condemned, both on the original and on the cross petition, is evidence of an inability to agree. (*Ward* v. *M. & N. W. R'y Co. supra*). In the present case, however, the record shows that negotiations were carried on from time to time for about a year between appellant's president on the one side, and the engineer, superintendent and vice-president of appellee on the other, with a view of arriving at an agreement for a crossing, but that such negotiations all failed. We do not think, that it was necessary for appellee's vice-president to produce a resolution of appellee's board of directors authorizing him to conduct such negotiations, when his authority to act was recognized and not in any way disputed by the president of appellant. If appellant had questioned his authority to act, proof of it would undoubtedly have been furnished.

*Fifth*—It is claimed that the court erred in permitting two witnesses of the petitioner to state, in answer to questions put to them upon the subject, that the business of appellant's road would be benefited by the proposed plan of operating trains over the crossing in question. Petitioner proved the value of the strip to be taken, and rested. Respondent then introduced expert witnesses, who stated that damage would be done to its business by reason of the delay occasioned by the new crossing over the "Y" track. The petitioner, upon the rebuttal, put upon the stand the two witnesses, whose statements are objected to, for the purpose of counteracting and disproving the testimony as to damage. These two witnesses were experienced railroad men, one being the engineer and the other the assistant general manager of the appellee company. They explained fully how the proposed plan of operating the trains would occasion less delay than had previously existed, and their explanation required knowledge of a special character. Their evidence shows, that the benefit ascribed to the proposed plan would arise from the diminution of the causes of delay and accident, as explained by them.

Where the subject is one, upon which the jury is not as well able to judge for themselves as is the witness, an expert may be allowed to testify. (*Transportation Line* v. *Hope,* 95 U. S. Rep. 297). If the defendant is permitted to introduce expert testimony as to damage, testimony of a similar kind is allowable upon the rebuttal.

Proof of some of the statements, made by appellant's president during the negotiations for an agreement upon a plan for crossing appellant's "Y" track, is alleged to have been erroneously admitted, but we do not think that there was any error in this regard. The business of corporations can only be carried on through their officers, agents and servants. They are bound, in their ordinary affairs, by the acts and admissions of their officers relating to the business usually transacted through such officers. The president of a railroad corporation is regarded as its head; and his admissions, made in the execution of the duties imposed upon him concerning a matter, upon which he is required to act and which is within the scope of the authority usually exercised by him, is evidence against the corporation. (*C., B. & Q. R. R. Co.* v. *Coleman,* 18 Ill. 297; *Wilson Sewing Machine Co.* v. *Boyington,* 73 id. 534; *U. M. Life Ins. Co.* v. *White,* 106 id. 67).

*Sixth*—Complaint is made that the court refused to give certain instructions asked by the respondent. One of these instructions contains the proposition, that, if damage to appellant's business or property was caused by reason of the proposed crossing over appellant's "Y" track, such damage could not be diminished by any benefit, which might be shown to arise at the eastern end of the "Y" track by reason of the fact that, at such eastern end, a blockade, or "fouling," of appellant's business might be relieved. The owner of land condemned for the use of the public must be paid in money the full value of the land taken without deduction therefrom of any benefits, which may accrue to the remaining land from the construction of the improvement. (*Hayes* v. *O. O. & F.*

19—149 Ill.

*R. V. R. R. Co.* 54 Ill. 373 ; *Carpenter* v. *Jennings,* 77 id. 250.) But it has been held by this court in a number of cases, that special benefits to property not taken but claimed to be damaged, may be considered for the purpose of reducing such damages, or of showing that, to the extent of such special benefits, there are no damages. (*Cemetery Association* v. *Railroad Co.* 121 Ill. 199, and cases cited.)

In the present case, the respondent filed a cross-petition seeking to recover damages to those portions of its "Y" track not taken by the crossing, alleging that, by the building of the crossing and the use thereof, the continuity of its said "Y" track would be broken, and its use for railroad purposes hindered and prevented, and its value greatly depreciated. It was proper to consider special benefits to a part of said "Y" track not taken in reduction of such damages. We cannot conceive how it can make any difference in the application of this rule, that the point where the benefit is alleged to have been received was at the eastern end of the "Y" track, distant not more than five hundred feet from the proposed crossing. The point of benefit was within those portions of said "Y" track not taken which were alleged to be damaged by the crossing, and, therefore, was not too remote to be taken into consideration, as counsel for appellant contend.

In support of their contention upon this subject, counsel refer us to a number of cases, holding that, where a railroad is run through a piece of land, the damages to the portion thereof not taken cannot be reduced by benefits to another and separate piece of land through which the road does not run. (*St. L., V. & T. H. R. R. Co.* v. *Brown,* 58 Ill. 61; *Todd* v. *Kankakee & Ill. Riv. R. R. Co.* 78 id. 530; *P., Ft. W. & C. R. R. Co.* v. *Reich,* 101 id. 157). The doctrine of these cases is not applicable here, because the "Y" track in question is one continuous line, and the part thereof, where the benefit is alleged to occur, is not separate from the part where the crossing is made, but, on the contrary, is one with it.

As to the other refused instructions of which complaint is made, we find, upon examination, that the identical matters therein embodied were fully expressed in instructions given for the appellant; and, therefore, appellant was not injured by the refusal.

The judgment of the County Court is affirmed.

*Judgment affirmed.*