## LUMPKIN v. BROWN. (No. 1377.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 30, 1918. On Second Motion for Rehearing, Nov. 13, 1918.)

1. PLEDGES ⟐⟐7—INVALIDITY OF DEBT—EFFECT AS TO PLEDGE.

Where note given by railway company for money borrowed was void for failure of officers of company to comply with Vernon's Sayles' Ann. Civ. St. 1914, arts. 6717, 6727, defendant holder would have no right to enforce notes received by company for stock and pledged by it as collateral, although defendant had a cause of action against company on implied promise to pay money received.

2. PAYMENT ⟐⟐85(2)—RECOVERY—MISTAKE.

Where note given by plaintiff to railway company for stock was turned over by it to defendant as collateral to note of company indorsed to defendant for money borrowed, plaintiff, who paid collateral note to defendant under mistaken belief induced by representations of defendant's agents that defendant was rightful and innocent holder, was entitled to recover from defendant money paid, the company's note being void for failure to comply with Vernon's Sayles' Ann. Civ. St. 1914, arts. 6717, 6727.

Appeal from District Court, Dallam County; Reese Tatum, Judge.

Action by C. L. Brown against A. A. Lumpkin, administrator. Judgment for plaintiff, and defendant appeals. Affirmed.

Jno. W. Veale, of Amarillo, and Del W. Harrington, of El Paso, for appellant.

Crudgington & Works, of Amarillo, for appellee.

HALL, J. The Enid, Ochiltree & Western Railroad Company organized to construct a line of road from Dalhart, Tex., to Ochiltree, Tex., secured a number of subscribers to its stock, who lived along the proposed line of road; appellee being one of such subscribers. September 1, 1910, the directors of the company executed the obligation of the company in the sum of $28,000, delivering the same to one F. R. Dennis, with instructions to negotiate it for the sum of $25,000. The directors attached to this note as collateral security for its payment subscription notes to the amount of over $38,000, appellee's note in the sum of $2,984.52 being included with those of other subscribers. The original note authorized the holder thereof, in the event of a failure on the part of the railway company to pay at maturity, to sell the collateral notes or any part thereof, applying the proceeds of such sale to the payment of the principal and interest of the original note and the expenses of sale. The original note was sold by Dennis to Charles R. Jones, and upon the maturity thereof he advertised and sold the collateral notes and became the purchaser thereof at said sale. In the case of Jones v. Abernathy, 174 S. W. 682, this court held that the original note for $28,000, having been issued by the directors and mana'gers without complying with the requirements of Vernon's Sayles' Civil Statutes, arts. 6717 and 6727, was void; and further held that since the original note was void Jones was not entitled to recover against the several makers of the collateral notes. See, also, Otto v. Halff et al., 89 Tex. 384, 34 S. W. 910, 913, 914, 59 Am. St. Rep. 56. Jones purchased the original note September 14, 1910, and on December 11, 1911, sold and purchased the collateral notes for $4,000 and certain lands belonging to the railway company for $1,000. Prior to such sale, the railroad company had been declared insolvent and the district court of Dallam county had appointed a receiver for its properties in December, 1910. The receivership was closed on the 3d day of November, 1912. At the time of the appointment of a receiver, only about 14 miles of track from Dalhart toward Ochiltree had been completed. It appears from the record that appellant Lumpkin was appointed administrator of the estate of Charles R. Jones, who died about the ——— day of ———, 1914.

On April 1, 1913, appellee paid off his note which was at that time held for collection by the bank at Dalhart. This suit was filed in February, 1916, to recover the amount of such payment. Appellee alleged the facts above set out, and further alleged that his subscription to the stock of such railroad company, for which his note was executed, was procured by certain representations, promises, and assurances made to him by the promoters and officers of said railroad company, to the effect that the greater part of the capital stock had been paid in or would be before appellee's liability on said note would be insisted upon, and made further false representations as to where and when said road could be constructed. He alleged failure of consideration, the issuance of the $28,000 note without compliance with the stock and bond law of this state, and further that at the time he paid his note to appellant's decedent he did not know that the $28,000 note had been executed by the railroad company and sold to Charles R. Jones, and did not learn of such facts until along in February, 1915. He alleged that appellant's right to recover other than upon the collateral note was barred by limitation, and by supplemental pleading denied under oath the agency of F. R. Dennis to transfer the note sued on, and explained that only $1,425 of his note for $2,984.72 represented his subscription for stock, and that his claim for same had been properly proven and presented to the administrator and by him rejected.

The appellant alleges that, at the time Charles R. Jones purchased the note for $28,000, he resided in the state of Illinois; that he was ignorant of the acts of the promoters of the railroad in the conduct and management of its affairs, as well also as of the laws of this state regulating the issuance and sale of railroad securities; that he purchased the note for $28,000 and the collateral notes in due course of trade, paying value therefor, and without knowledge of the alleged fraud and misrepresentation of the officials of said railway company. It is further alleged that appellee, at the time of the execution and delivery of said note, was a stockholder in said railroad and was indebted to said railroad to the extent of the par value of the shares for which he had subscribed, and for which the note and mortgage were given; that by reason of the purchase by Charles R. Jones of said note he became subrogated to all the rights of the railroad to the note of appellee; that at the time of the payment of said note by appellee he was fully advised and in possession of all the facts and information pertaining to the affairs of the railroad company, and at said time knew of the alleged falsity of the representations made to him inducing him to execute said note; that he voluntarily paid the same and is estopped to recover. Appellee further alleged that the money furnished by Jones was used in and about the construction and equipment of said railroad, and that if appellee had any cause of action for deceit or misrepresentation it was against said railroad company, and not against Jones or his estate. By trial amendment, appellant set up laches on the part of appellee in not promptly disavowing his contract after his discovery of the alleged frauds practiced on him; that appellee was a stockholder in the

railroad company before and at the time appellant's decedent purchased the note; and that Dennis being appellee's agent, and appellant's decedent relying on the representation and statement of said Dennis as to the validity of the note, estops appellee from setting up its illegality for fraud or any other reason. A trial before the court without a jury resulted in a judgment for the appellee in the sum of $2,343.40 and costs of suit.

Under the first and second assignments, the proposition is urged that one who has in good faith furnished money in the purchase of bonds which are by statute declared void, under the belief that they were valid, may recover the money so furnished, independent of the statutory infirmity of such obligations. A number of authorities are cited to sustain this proposition, amongst them Louisiana City v. Wood, 102 U. S. 294, 26 L. Ed. 153. In that case the appellee was permitted to recover against the city of Louisiana, not upon the bonds issued by the city in violation of the statute and purchased by him, since the court declared that by reason of the violation of the statute the bonds were invalid, but the recovery was decreed upon equitable grounds; the court saying:

"It is equally true that the legal effect of the transactions by which the plaintiff and his assignors got possession of the bonds was a borrowing by the city of the money paid for what was supposed to be a purchase of the bonds. As the broker through whom the business was done was the agent of the city and acting as such, the case, so far as the city is concerned, is the same as though the money had been paid directly into the city treasury and the bonds given back in exchange. The fact that the purchasers did not know for whom the broker was acting is, for all the purposes of the present inquiry, immaterial. They believed they were buying valid bonds which had been negotiated and were on the market, when in reality they were loaning money to the city, and got no bonds. The city was in the market as a borrower, and received the money in that character, notwithstanding the transaction assumed the form of a sale of its securities. The city, by putting the bonds out with a false date, represented that they were valid without registry. The bonds were bought and the price paid under the belief, brought about by the conduct of the city, that they had been put out and had become valid commercial securities before the registry law went into effect. It would certainly be wrong to permit the city to repudiate the bonds and keep the money borrowed on their credit. The city could lawfully borrow. The objection goes only to the way [in which] it was done. As the purchasers were kept in ignorance of the facts which made the bonds invalid, they did not knowingly make themselves parties to any illegal transaction. They bought the bonds in open market, where they had been put by the city in possession of one clothed with apparent authority to sell. The only party that has done any wrong is the city. * * * 'The obligation to do justice rests upon all persons, natural or artificial, and if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation.'" etc.

The facts in the case are that on the 28th day of March, 1872, the Legislature of Missouri passed an act providing for the registration of bonds issued by municipal corporations, providing that all bonds thereafter issued to become valid must be issued, registered, etc., under its provisions. In July, 1872, after the act became operative, the city council of Louisiana, Mo., issued the bonds in question, reciting that they were issued under the ordinance of 1867, and fraudulently antedating them as of the date of January 1, 1872, thus causing the bonds to appear as though they did not come within the provisions of the act of March, 1872, and this was a fact of which the purchaser of the bonds was ignorant, and upon his ignorance of this fact his right to recover was predicated. In the purchase of the $28,000 note by Jones it has never been shown that he was ignorant of any fact, but it was alleged and shown that he was ignorant of the law, a failure to comply with which rendered the note purchased by him void.

The rule announced in the Louisiana v. Wood Case is a salutary one and has been adhered to by a number of decisions, but it has no application here. This is not a suit by Jones or his administrator against the railroad company, seeking to recover upon equitable grounds money loaned to the railroad company. As heretofore held in the Jones-Abernathy Case, the invalidity of the principal debt destroyed Jones' claim upon the collateral securities held for its payment. He was therefore not the pledgee of the collateral paper, including appellee's note, and his sale under the authority given him in the original note was void, and his purchase at said sale gave him no right to any of the collateral notes. He was therefore not entitled to any of the proceeds of said notes. The principle announced in the Louisiana-Wood Case and relied upon by appellants in this controversy can in no way be made to apply for the further reason that the corporation known as the Enid, Ochiltree & Western Railroad Company is a separate and distinct entity in so far as its stockholders are concerned. They are not responsible for the debts of the corporation. The writer is of the opinion that in paying his note appellee paid it to one who was not entitled to collect it, either in law or equity, and if he paid it under a mistake of fact he is entitled to recover the amount so paid, even without proof that the note was void for fraudulent representations. The uncontradicted evidence is that at the time he paid the note to the bank holding it for collection he was ignorant of the facts that the $28,000 note had been made and negotiated, that his subscription note had been conveyed to Jones, but had been informed by an officer of the bank which held his note for collection that it had been turned over to a "woman in Dalhart" who had purchased without any knowledge of the failure of consideration or fraud perpetrated upon him. It was further shown that, after the conversation with the officer of the bank, he had consulted two

different attorneys, who had told him that since his note was in the hands of an innocent purchaser for value no defense could be urged against it and he must pay it.

The writer thinks that, payment having been made under such circumstances, the rule that voluntary payments, made in ignorance of material facts, may be recovered, applies. But the opinion of the majority of the court, as expressed upon the consideration of the motion for rehearing, is that appellee could not recover the amount unless, in addition to the facts stated, his note was void by reason of fraudulent representations made by the promoters of the railway company. The record shows that the court found that appellee was induced to execute the note which he paid to Jones by representations and statements of W. R. Allen and one Morton, to the effect that arrangements had been made for financing the railroad and that the road would be built and operated as soon as a few subscribers in Ochiltree county had secured their notes; that the money for building the road had been arranged for; that plaintiff was the last man they had to see; and that when he gave his note all arrangements would be perfected. It was shown that Allen was the head of the construction company which proposed to construct the road, and was acting for the promoters, and that Morton was one of the directors. The court further found that arrangements had not been made for financing the road and that neither Weist nor his associates were able to finance it; that the money had not been arranged for and that all statements as to said matters relied upon by plaintiff were untrue; that the road was never built except a few miles, which was of no benefit to plaintiff's land, and that the consideration for the subscription and note had wholly failed. This finding is not excepted to and is, in the opinion of the majority of the court, when considered in connection with what has heretofore been said, sufficient to sustain the judgment.

The original opinion herein is therefore amended in conformity with the views of the majority. The motion for rehearing is overruled, and the judgment is affirmed.

## On Second Motion for Rehearing.

BOYCE, J. In the opinion of the court heretofore rendered this statement is made:

"In the purchase of the $28,000 note by Jones it has never been shown that he was ignorant of any fact."

This is incorrect. It was agreed upon the trial—

"That said Jones was not one of the promoters of said railway company and was in no manner connected with same or with any of the promoters or agents in the organization or promotion of such enterprise, and the only dealings he had with said company was the purchase of the * * * said $28,000 note and the taking over of the securities attached thereto, and that he had no actual knowledge of the conditions affecting any of said notes or lands,

except such information as was given him by Dennis, who represented that the board of directors had by resolution authorized him to make the transfer of said note and securities, and he relied upon such information and acted thereon."

The first statement is therefore withdrawn, and the agreement just quoted adopted in lieu thereof. We are of the opinion, however, that this should make no difference in the disposition of the case.

In view of the confusion which the statement of the difference in the grounds upon which the conclusions of the majority of the court and that of Judge HALL are based has apparently caused, we deem it proper to restate such conclusions in more detail.

[1] The case was tried, briefed, and decided on the theory that it had been settled by the decision in the case of Jones v. Abernathy, 174 S. W. 682, that the $28,000 note was void and Jones could not maintain an action thereon. Appellant admitting the correctness of this conclusion, contended that, by reason of the fact that the money borrowed on the $28,000 note had been received and used by the railway company, he had a cause of action against the railway company on an implied promise to repay this money, and that he held some right in the collateral attached to the $28,000 note to secure this obligation. All the members of this court, however, agreed in the conclusion that, even if Jones did have such cause of action on the implied promise to pay the money received, the invalidity of the principal $28,000 note discharged the collateral and he had no right to it. This conclusion was based on the authorities referred to in the Jones-Abernathy Case, and on the holding of the Supreme Court in Otto v. Halff, 89 Tex. 384, 34 S. W. 910–913, 59 Am. St. Rep. 56, where a principal note, having collateral pledged to secure it, was altered by the holder and thus rendered invalid, and the maker of the note was liable for the original debt for which the note was given in payment, and it was held that the collateral was discharged as being a part of the contract evidenced by the note and not of the original contract of indebtedness.

[2] We all agreed in the further conclusion that appellee Brown had paid the note to Jones under the mistaken belief induced by the representations of Jones' agents for collection that Jones was the rightful and innocent holder thereof. In the opinion of Judge HALL this was all that was necessary to be shown to entitle Brown to a recovery. The majority of the court were not willing to commit themselves to this broad conclusion when the facts of the case did not, in our opinion, require it. If Brown really owed the note and was originally bound to pay it to the rightful owner, we doubted whether he could recover what he had paid to Jones, who had possession of the note and delivered it to him on such payment without fur-

ther showing that liability for the payment thereof still existed in favor of the rightful owner of the note, the Enid, Ochiltree & Western Railroad Company; and we were inclined to think that the railway company, as it had intrusted the note to Jones, clothed him with indicia of rightful ownership, and plaintiff was thus induced to make the payment which facts it became necessary for plaintiff himself to allege and establish before he could recover the payment voluntarily made would be estopped from denying Jones' right to receive payment and demanding a second payment of the note from Brown: But it was pleaded and found as a fact by the trial court, and no question of the finding made by appellant in this court, that Brown had a good defense to the note as against the railroad company, because of the fact that it was procured by false representations and the consideration therefor had failed. And the majority of the court desired that these facts be stated so that the true extent of our holding would be understood. Such holding is that appellee Brown, having a good defense to the note of which he was prevented from taking advantage by reason of the payment to Jones, under the circumstances stated, is entitled to recover the payment so mistakenly made.

We are of the opinion that the motion for rehearing should be overruled.