## LUMPKIN v. BROWN.    (No. 203–3280.)

(Commission of Appeals of Texas, Section A.
March 30, 1921.)

**1. Railroads ⊜16—Notes secured by deeds of trust on lands "property" receivable in payment of stock subscriptions.**

Under Const. art. 12, § 6, a railroad company can legally accept notes secured by deeds of trust upon lands as "property" in payment of stock subscriptions.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Property.]

**2. Railroads ⊜18—May pledge notes received for stock.**

The right of a railroad company to accept notes secured by deeds of trust upon lands as "property" in payment for stock carries with it the power to dispose of them, including the lesser power to transfer and assign them as collateral, a power not to be denied in the absence of a constitutional or statutory prohibition.

**3. Railroads ⊜145—Commission need not consent to indebtedness not operating as lien.**

Rev. St. 1911, art. 6717 et seq., denounces as void the creation of indebtedness operating as a lien on the property of a railway company used by it in conducting the business for which it was chartered, unless such indebtedness was authorized · by the Railroad Commission, and does not render void the creation of indebtedness without the consent of the Commission which does not operate as a lien on property essential to or of use in operation of the road.

**4. Railroads ⊜145—Statute requires Commission's consent to indebtedness though road received money.**

Rev. St. 1911, art. 6717 et seq., voiding the creation of indebtedness by a railroad company without the consent of the Railroad Commission operating as a lien on property essential to or of use in the operation of the road, cannot be evaded on any ground that the railroad actually) received money raised through execution of a note secured, among others, by stock subscription notes secured by deeds of trust on land, an indebtedness void under the statutes.

**5. Payment ⊜85(3)—Stock subscriber not estopped to demand return of money paid on discovery that his note was transferred in violation of statute.**

Where a note executed by a railroad company secured by stock subscription notes secured by deeds of trust was void under Rev. St. 1911, art. 6717 et seq., as a transaction had without the consent of the Railroad Commission, and the stock subscriber paid his note to the bank holding it for collection on the advice of his attorney without knowledge of the illegal character of the indebtedness it was transferred to secure, and on the mistaken belief it was in the hands of an innocent holder for value, the stock subscriber is not estopped to demand return of the money paid on discovery the note was transferred as collateral

to secure an indebtedness created in contravention of the statutes.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by C. L. Brown against A. A. Lumpkin, administrator of the estate of Charles R. Jones, deceased. From judgment for plaintiff, defendant appealed to the Court of Civil Appeals, which affirmed the judgment (206 S. W. 217), and defendant brings error. Judgments of the Court of Civil Appeals and of the trial court reversed, and cause remanded for new trial on recommendation of the Commission of Appeals.

Del W. Harrington, of El Paso, and Jno. W. Veale, of Amarillo, for plaintiff in error. Crudgington & Works, of Amarillo, for defendant in error.

SPENCER, J. Defendant in error, C. L. Brown, sued A. A. Lumpkin, administrator of the estate of Chas. R. Jones, deceased, to recover the amount which he had paid to the administrator in satisfaction of certain notes executed by him which Jones had purchased.

The facts briefly are: That Brown subscribed for stock in the Enid, Ochiltree & Western Railway Company, a corporation organized under and by virtue of the laws of Texas, giving his note, secured by deed of trust upon certain lands, in payment thereof. The railway company, desiring to negotiate a loan of $25,000, executed through its board of directors its note to F. R. Dennis in the sum of $28,000, and to secure which it indorsed and delivered to him as collateral various stock subscription notes, including the notes executed by Brown, secured by deeds of trust upon the property described in said deeds of trust, and as additional security executed a deed of trust upon two tracts of land which it owned, one situated in Hansford county, and the other in Dallam county, Tex. The company authorized Dennis to use the note and its securities in securing the sum desired. No authority was obtained by the railway company from the Railroad Commission of Texas to create any indebtedness, or to execute the note and fix a lien upon any of its property to secure the payment of this note.

The company's note secured by the deed of trust upon the two tracts of land above mentioned and the collateral attached thereto was purchased by Jones for the sum of $25,000, and the sum received for the note was used by the railway company in the construction of its line, which, however, was never completed as contemplated. Upon default having been made in payment of the railway company's note, Jones sold the collateral security and the land described in the deed of trust, as he was authorized to do, at public sale, and at said sale purchased the

collateral notes, including the note executed by defendant in error, for the sum of $4,000, and the lands for the sum of $1,000, and credited the $28,000 note with these amounts.

Defendant in error alleged that after being notified by a bank at Dalhart that it held the notes executed by him for collection, and after consulting with his attorney as to his liability thereon, he paid the same under the mistaken belief of fact that Jones was an innocent holder for value. He further alleged that the execution of the deed of trust upon the property of the railway company to secure the payment of the $28,000 note without the authority of the Railroad Commission rendered the note and deed of trust absolutely void, and the transaction between Jones and the railway company and Dennis of no effect, and subjected the note and deed of trust executed by him to all the defenses which might be urged thereto in the hands of the original payee. As defenses thereto he urged that the note and deed of trust executed by him were procured to be executed by fraud, and that the consideration given therefor had wholly failed.

Plaintiff in error defended upon the ground that defendant in error, with knowledge of the misrepresentations in procuring the note and deed of trust, voluntarily paid the note, and that he was estopped to recover the money so paid; and (2) that, although the transaction was illegal and void, Jones was subrogated to all the rights of the railway company, and entitled to recover for money had and received.

Upon a trial before the court without the aid of a jury, the court sustained the contentions of defendant in error, as revealed by the findings of fact and conclusions of law filed in said cause, and rendered judgment for him. Upon appeal the Court of Civil Appeals affirmed the judgment. 206 S. W. 217.

In the application for writ of error plaintiff in error for the first time urges that the note executed and delivered to Dennis by the railway was not invalid under what is commonly termed the Texas stock and bond law (title 115, ch. 16, Revised Civil Statutes 1911), and that, as Jones purchased the same with its collateral before maturity for a valuable consideration, and without notice of any infirmities therein, he was a bona fide holder of the note and its collateral.

The honorable Court of Civil Appeals treated the execution of the note and deed of trust by the railway company as being a transaction in contravention of the stock and bond law, rendering the note and deed of trust and all transactions growing out of the execution of the same absolutely void. If the note was not executed in contravention of the stock and bond law, then under the undisputed facts Jones was an innocent holder for value, and his administrator is entitled to recover.

The general rule with reference to the power of railway companies to mortgage property and create indebtedness is stated by Mr. Elliott in his work on Railroads (2d Ed.) vol. 1, par. 488, as follows:

"Railroad bonds are usually secured by mortgage or trust deed, and mortgages are frequently executed for other purposes as well. As a railway company receives from the state special privileges because of its public purpose, and has duties to perform in person, and as a mortgage may become in effect an absolute conveyance or result in a sale by foreclosure, such a company cannot, without legislative authority, mortgage its franchise and property essential to this exercise. *This rule is not, however, applicable to property which is not essential to or of use in the fulfillment of the corporation's public purpose and not necessary to enable the company to perform its duties to the public.*" (Italics ours.)

In support of the rule announced in the concluding portion of the text, the following cases are cited: Platt v. Union Pac. R. Co., 99 U. S. 48, 25 L. Ed. 424; Tucker v. Ferguson, 22 Wall. 527, 22 L. Ed. 805; Taber v. Cincinnati, L. & C. Ry. Co., 15 Ind. 459; Pierce v. Emery, 32 N. H. 484; Coe v. Columbus, P. & I. R. Co., 10 Ohio St. 372, 75 Am. Dec. 518, and note 550; Bickford v. Grand Junction R. Co., 1 Sup. Ct. of Canada, 696; Jones, Railroad Bonds and Mortgages.

The facts in the Platt v. Railway Co. Case, supra, show that the railway company issued its bonds for the purpose of raising money necessary to complete the construction of its road, and to secure the payment thereof executed a mortgage upon certain lands which the United States government by an act of Congress had granted to it with the reservation in the grant that all lands granted which had not been disposed of by the company within three years after the entire road had been completed should be subject to settlement and pre-emption. Mr. Justice Strong, speaking for the court, said:

"Was the mortgage a sale or disposition of the lands as understood by Congress? That the company had power to mortgage the lands admits of no reasonable doubt. It may be conceded that a railroad company has not power either to sell or mortgage its franchise, or perhaps the road which it has been chartered to build, without express legislative authority, and this has in some cases been decided. The reason is that such a sale or mortgage tends to defeat the purposes the Legislature had in view in the grant of the charter. The adventurers who obtain the charter and who accept it undertake to construct and maintain the public work. Their undertaking is the consideration of the grant, and without legislative consent they cannot throw off the obligation they have assumed. But the reason is inapplicable to sale or mortgage of property which is not a part of the road and in no way connected with its use. Parting with such property or incumbering it in no degree interferes with the performance of the duties of the company to

the public. Railroad companies are not usually empowered to hold lands other than those needed for roadway and stations and water privileges. But, when they are authorized to acquire and hold lands separate from their roads, the authority must include the ordinary incidents of ownership—the right to sell or to mortgage."

In the case of Hendee et al. v. Pinkerton, 14 Allen (Mass.) 381, the Grand Junction Railway Company executed bonds secured by a mortgage upon certain real estate, a part of which was not needed or used for the purpose of operating the road. Mr. Justice Foster, speaking for the Supreme Court of Massachusetts, said:

"We entertain no doubt that the Grand Junction Railroad and Depot Company could lawfully sell and convey the lands embraced in this bill. They were not acquired to enable the corporation to carry on the business which it was chartered to do for the benefit of the public, nor needed or used for that purpose. Their alienation in no wise impaired or affected the usefulness of the company as a railroad, or its ability to exercise any of its corporate franchises. In the absence of any express or implied legislative prohibition, this corporation possessed all the ordinary rights of ownership over these lands, and could convey them away absolutely, or mortgage them to secure any valid indebtedness."

In view of this rule, it becomes necessary to consider the stock and bond law, to determine whether there is within its spirit and intent an inhibition against a railway company creating an indebtedness and securing it by creating a lien upon property not essential to or of use in the operation of the road, without the consent of the Railroad Commission, the lien not covering the franchise of the company nor any of its property essential to or connected with the operation of the road. The sections of the law that can have any application in the solution of the question are:

"Article 6717. (4584a) *Regulation of Issue of Stocks, Bonds, etc., by Railroads Vested in State.*—Among other things, the power and authority of issuing or executing bonds, or other evidences of debt, and all kinds of stock and shares thereof, and the execution of all liens and mortgages by railroad corporations in this state are special privileges and franchises, the right of supervision, regulation, restriction, and control of which has always been, is now, and shall continue to be vested in the state government, to be exercised according to the provisions of this and other laws. [Acts 1893, p. 57.]

"Article 6718. (4584b) *Issue of Incumbrance Above Value of the Road Prohibited; Except, etc.*—Hereafter no bonds or other indebtedness shall be increased or issued or executed by any authority whatsoever, and secured by lien or mortgage on any railroad, or part of railroad, or the franchises or property appurtenant or belonging thereto, over or above the reasonable value of said railroad property; provided, that in case of emergency, on conclusive proof shown by the company to the railroad commission that public interests or the preservation of the property demand it, the said commission may permit said bonds, together with the stock in the aggregate, to be executed to an amount not more than fifty per cent. over the value of said property. [Id.] * * *

"Art. 6722. (4584f) *Authority to Issue Bonds Before Completion of Roads Must be Obtained, etc.*—Should any company or corporation authorized to construct, own or operate a railroad in this state desire to issue bonds or other indebtedness, to be secured by lien or other mortgage on its franchises and property, in advance of the completion of the said railroad, it shall make application to and first procure the consent of the Railroad Commission thereto. In said application, it shall exhibit to the Commission its contract with the construction company, if it have any, the profile of its completed road or part of road, the evidence of its right of way, depot grounds, terminal facilities, the extent and value of work done or in process of completion, the amount of property received, the amount of stock subscribed and the amount paid in, and all other necessary facts showing the value of the franchises and property proposed as security for said contemplated debts. If, on investigation, the commission is satisfied that the company is acting in good faith, and that its contract with the construction company is reasonable and fair to the public, then it shall authorize the execution of said indebtedness and lien to the extent necessary for the demands of the work, at no time to be more than fifty per cent. over the value of the whole property and franchises. In executing said bonds, the company shall comply with article 6723, and have them registered, as required in article 6724. * * *

"Art. 6727. (4584k) *Certificates, Bonds, etc., Void.*—Every certificate of stock in any railroad company and every bond and other evidence of debt operating as a lien upon the property of such railroad company, which shall be made, issued or sold without a compliance with this chapter, shall be void."

To assist in ascertaining this cardinal intent, it is proper to consider the existing or supposed evil which called for its enactment; the cause leading to its enactment being a part of the political and economic history of this state. Legislation dealing with the issuance of stock by railroad corporations had its origin in Acts 8th Leg. ch. 51, p. 60. Section 1 of the act reads:

"That no railroad company shall issue any shares of stock in said company except at its par value and to actual subscribers who pay, or become liable to pay, the par value thereof; and every officer or director of a railroad company who shall issue, or consent to the issue of any share of stock in violation of this provision, shall become personally liable to the stockholders and creditors of said company, for the full par value thereof; provided, however, that any company may provide in its by-laws for the issue of certificates of stock in payment of any debt contracted for the construction or equipment of its road, and any bona fide indebtedness."

The next action taken with reference to the issuance of stocks and bonds was the incorporation of section 6 of article 12 in the Constitution of 1876. It provides:

"No corporation shall issue stock or bonds except for money paid, labor done, or property actually received, and all fictitious increase of stock or indebtedness shall be void."

This provision of the Constitution was incorporated into Acts 15th Leg. ch. 97, § 25, p. 148. The act is silent in the matter of providing any penalty for the violation of the provision.

In the codification of 1879 section 1 of the act of 1860—with the proviso eliminated—and section 25 of the act of 1876 were brought forward as articles 4154 to 4156, inclusive. This was the status of the law at the time the Legislature took up for consideration the act now under review.

The Legislature, recognizing that bonds in excessive amounts far beyond the value of the property bonded had been issued in violation of the constitutional provision, and realizing the inadequacy of the laws to which we have referred to curb the evil, passed this law to make effective the constitutional provision and to protect investors in this class of securities from being defrauded by purchasing highly inflated stock. That this was the fundamental object of the enactment is made manifest by the express declaration of the caption and by the concluding portion of the act. Acts Twenty-Third Legislature, ch. 51, p. 60.

The manifest intention of the Legislature having been ascertained, our investigation is narrowed upon this phase of the case to the single question: Was it the intention of the Legislature to prevent the creation of indebtedness by railway companies secured by liens upon the property of the company not used in the operation of the road, and in no wise connected therewith, unless authorized to do so by the Railroad Commission?

The act provides for the issuance of bonds before and after the completion of the road. In the instant case the indebtedness was created in advance of the completion of the road, and, if any part of the law has been violated, it is article 6722. This article directs the procedure necessary to bond a railway in advance of its completion. The application to the Railroad Commission showing the general condition of the road as to work done and that contemplated and all necessary facts showing the value of the franchises and property proposed as security for the contemplated debt is made the basis of an investigation by the Railroad Commission to determine whether that body shall authorize the execution of the debt and the creation of a lien upon the whole property and franchises, subject to the limitation specified in the article. If the bonds representing said indebtedness are authorized and approved by the Railroad Commission, they are thereafter, at its direction, registered by the Secretary of State. Article 6725.

The efficacy of the law in regulating the issuance of bonds cannot be doubted. Obedience to its requirement is necessary to insure against the inflation of such securities. But it is inconceivable that the creation of a lien upon property in no wise essential to, or used in connection with the operation of the road could serve as an incentive to the issuance of bonds in excessive amounts, or' violate the manifest purpose of the act. No lien is created upon its franchises or upon the whole property of the company. If subsequent to the creation of a lien upon property not essential to or connected with the operation of the road application should be made to bond the entire properties of the road, including its franchises, the issuance of bonds could be regulated with the incumbrance in view, and no inflation would result.

[1, 2] The railway company can, it has been held, legally accept notes secured by deeds of trust upon lands in payment of stock subscriptions. General Bonding & Casualty Co. et al. v. Moseley et al. (Sup.) 222 S. W. 961. The right to accept the notes thus secured as property carries with it the power to dispose of them—which includes the lesser power to transfer and assign them as collateral—and, in the absence of a constitutional or statutory inhibition, this power is not to be denied.

The broad terms used in article 6717 are but declaratory of the general purpose of the act, and are not to be employed to pervert the true intent and purpose of the Legislature. As said by Chief Justice Moore, speaking for the Supreme Court:

"If courts were in all cases to be controlled in their construction of statutes by the mere literal meaning of the words in which they are couched, it might well be admitted that appellants' objection to the evidence was well taken. But such is not the case. To be thus controlled, as has often been held, would be for the courts in a blind effort to refrain from an interference with legislative authority by their failure to apply well-established rules of construction to, in fact, abrogate their own power and usurp that of the Legislature, and cause the law to be held directly and contrary of that which the Legislature had in fact intended to enact. While it is for the Legislature to make the law, it is the duty of the courts to 'try out the right intendment' of statutes upon which they are called to pass, and by their proper construction to ascertain and enforce them according to their true intent. For it is this intent which constitutes and is in fact the law, and not the mere verbiage used by inadvertence or otherwise by the Legislature to express its intent, and to follow which would pervert that intent." Russell v. Farquhar, 55 Tex. 355.

[3] It was the manifest intention of the Legislature to denounce as void the creation

of indebtedness operating as a lien upon the property of a railway company, used by such company in conducting the business for which it was chartered, unless such indebtedness was authorized by the Railroad Commission, and not that the creation of indebtedness without the consent of the Railroad Commission, which did not operate as a lien upon the property essential to or of use in the operation of the road, should be void.

The transaction is legal unless the land upon which the deed of trust was given was essential to or to be used in connection with the operation of the road. The trial proceeded upon the theory that the indebtedness was void because the Railroad Commission had not authorized it nor the creation of the lien to secure it. The agreed statement of facts show that a deed of trust was given upon the land, but there is a total lack of evidence as to whether the land was essential to or used in connection with the operation of the road; and, due to this unsatisfactory state of the evidence, we think that the case should be reversed and remanded for another trial.

In view of the uncertainty of what the evidence upon another trial may show as to the legality of the transaction, it is proper to notice the other assignments as they become important in the event the evidence reveals that the transaction was a prohibited one.

[4] The contention that, as the railway company actually received the money, and used it in the construction of its line, therefore plaintiff in error is entitled to recover upon the theory of money had and received, even though the transaction was illegal, meets with disfavor. Suffice to say that this would permit the doing indirectly of that which is directly and positively prohibited by statute, which is not to be countenanced.

[5] The trial court determined the question of estoppel adversely to plaintiff in error's contention, resting its decision upon the finding that the note executed by the railway company was void, and that defendant in error paid the note to the bank holding it for collection upon the advice of his attorney, without knowledge of the illegal character of the indebtedness it was transferred to secure, and upon the mistaken belief that it was in the hands of an innocent holder for value. Under such circumstances defendant in error would not be estopped to demand the return of the money paid upon discovery that the note was transferred as collateral to secure an indebtedness created in contravention of statute.

We recommend that the judgments of the Court of Civil Appeals and of the district court be reversed, and the cause remanded for a new trial.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission on the question discussed in its opinion.

---

⬤⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes